[Cite as *Thomas v. Murry*, 2021-Ohio-206.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

DONTAE THOMAS,                    :

    Plaintiff-Appellee,       :

                              No. 109287

    v.                        :

TIANA MURRY, ET AL.,              :

    Defendants-Appellants.    :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
                  AND REMANDED
**RELEASED AND JOURNALIZED:** January 28, 2021

---

Civil Appeal from the
Cleveland Heights Municipal Court
Case No. CVF1800462

---

### *Appearances:*

Cavitch, Familo & Durkin Co., L.P.A., and Robert A. West,
Jr.; Pina Law, L.L.C., and Leslie Pina, *for appellee*.

Joanne Brown, *for appellants*.

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Defendants-appellants, Tiana Murry ("Tiana") and Steve Thomas

("Steve") (collectively the "appellants"), appeal from the trial court's denial of their

motion for attorney fees and sanctions pursuant to Civ.R. 11 and R.C. 2323.51. Appellants raise the following assignments of error for review:

> 1. The trial court erred in overruling appellants' counsel's objection to the admission of appellee's affidavit [that was] offered to contradict appellee's sworn deposition testimony in lieu of live testimony.
>
> 2. The trial court erred in finding appellee's counsel did not engage in frivolous conduct.

{¶ 2} After careful review of the record and relevant case law, we affirm in part, reverse in part, and remand to the trial court for further proceedings consistent with this opinion.

## I. Procedural and Factual History

{¶ 3} In April 2018, plaintiff-appellee, Dontae Thomas ("Dontae"), filed a civil action against his older brother, Steve, and Steve's wife, Tiana, in the Cleveland Heights Municipal Court. The original complaint set forth claims for defamation, malicious destruction of property, malicious prosecution, aiding and abetting malicious prosecution, trespassing, and damages.

{¶ 4} The claims brought against the appellants stemmed from a verbal and physical altercation that occurred during a family birthday party hosted at Dontae's home in April 2017. Dontae's complaint alleged that the altercation between Tiana and several guests occurred after Tiana "crashed" the party despite not being invited to the gathering "due to bad blood between her and many family members." (Original complaint at ¶ 6-7.) Once Tiana was escorted out of the party, Steve "proceeded to break all of the windows in Dontae Thomas's car, which was parked in the driveway." *Id.* at ¶ 11.

**{¶ 5}** Thereafter, Dontae filed a police report, "accusing Steve of intentionally breaking the [car] windows with a bat." *Id.* at 12. In turn, Tiana filed her own police report, "claiming that at least six individuals assaulted her at the birthday party." *Id.* at ¶ 13. Dontae alleged that Tiana fabricated the police report and that her false statements "caused [him] to be arrested and incarcerated for four days without an attorney or opportunity for bond." *Id.* at ¶ 16.

**{¶ 6}** During the discovery process, Dontae verified the authenticity of the responses he set forth in plaintiff's first set of combined answers to interrogatories, requests for admissions, and requests for production of documents. Within Dontae's responses, he denied numerous requests for admissions, including a request to admit that Tiana was invited to the birthday party by Dontae's wife, Deanna Thomas.

**{¶ 7}** In April 2019, Dontae filed an amended complaint, which removed Steve as a party and named Tiana as the sole defendant. In addition, the amended complaint removed the claims for malicious destruction of property and aiding in abetting in malicious prosecution, and reduced the requested damages from $15,000 to $12,000.

**{¶ 8}** Dontae was deposed approximately one day after the amended complaint was filed. Following his deposition, Dontae filed a second amended complaint in May 2019. The second amended complaint also named Tiana as the sole defendant and asserted claims for defamation and malicious prosecution.

However, the second amended complaint removed the trespass claim against Tiana and reduced the requested damages to $10,000.

{¶ 9} In June 2019, all claims levied against Steve were formally dismissed without prejudice. Approximately one month later, Dontae filed a motion to dismiss all claims against Tiana pursuant to Civ.R. 41(A)(1)(a), which the trial court granted.

{¶ 10} Relevant to this appeal, the motion to dismiss stated as follows:

> This Honorable Court requested that this case be settled, and plaintiff agrees. Although plaintiff contends that his case has merit, there has already been enough suffering. His relationship with his brother has been severely damaged, and pursuing complaints against his brother's wife would cause additional hardship for the family.

{¶ 11} In July 2019, appellants filed a joint motion for attorney fees and sanctions against counsel for Dontae, Leslie Pina ("attorney Pina"), and her employer, the Pina Law Firm, L.L.C., pursuant to Civ.R. 11 and R.C. 2323.51. Relying on certain statements made by Dontae during his deposition, the motion alleged that attorney Pina willfully filed unsupported and frivolous claims against the appellants without Dontae's authorization, stating:

> At the time of filing, attorney Pina knew the case was devoid of any underlying facts necessary to support the claims. Attorney Pina filed the lawsuit to harass Steve Thomas and Tiana Tomas nee Murry and extort money from them.

{¶ 12} A hearing was held to address the motion in September 2019. At the hearing, Steve provided a brief recount of the incident at Dontae's home and expressed that he and Dontae "had a little misunderstanding about somethings," including the damages caused to Dontae's vehicle. Steve testified that, before the original complaint was filed in April 2018, he and Dontae "settled" the matter after

he informed Dontae that he had nothing to do with the broken windows. Steve stated that he was "very upset" when he was served with the lawsuit because the claims levied against him were "bogus." (Tr. 29-30.) On cross-examination, Steve acknowledged that Dontae's car windows had been destroyed on the night of the incident and that Dontae believed Steve was responsible for the damage.

{¶ 13} Tiana briefly testified at the hearing, stating that she was invited to the birthday party by Dontae's wife. She further testified that she does not recall being asked to leave the party.

{¶ 14} Finally, attorney Pina was called by defense counsel to testify as if on cross-examination. Attorney Pina maintained that Dontae intentionally included Steve in the original complaint but conceded that Dontae struggled with whether to maintain the action against his brother. Attorney Pina testified that "the original complaint was everything my client wanted in the complaint." (Tr. 63.) However, she explained that Dontae became increasingly conflicted about continuing the action against Steve and was concerned he would "never speak to [his] brother again." (Tr. 42.) Eventually, attorney Pina amended the complaint after Dontae notified her that he settled the matter with Steve and wished to remove him from the case. Attorney Pina was questioned about several email correspondences with opposing counsel and admitted that she had advised opposing counsel that Dontae intended to remove Steve from the complaint as early as January 2019 — several months before Steve was dismissed from the case.

{¶ 15} Regarding Tiana, attorney Pina conceded that she eventually learned that Tiana "probably was invited" to the party held at Dontae's home. (Tr. 62.) When she filed the trespass claim, however, Dontae was not aware his wife had invited Tiana to his birthday party. Attorney Pina maintained that she made an independent investigation prior to filing the original complaint and that her independent investigation showed that she was justified in filing a lawsuit that included a trespass claim. She expressed that amendments to the original complaint were made as she gathered additional information.

{¶ 16} On direct examination, attorney Pina explained that she and Dontae executed an engagement letter in March 2018, based on Dontae's intention to pursue a civil action against both Steve and Tiana. Attorney Pina stated that she discussed the facts and allegations with Dontae prior to filing a complaint and that Dontae was aware an action was being filed against Steve and Tiana.

{¶ 17} Relevant to this appeal, attorney Pina testified that she personally read, reviewed, and filed the original complaint on Dontae's behalf with a good-faith belief that there were good grounds to support each of the asserted claims. She reiterated that she did not file the original complaint for the purpose of delay and that she investigated the relevant facts and law before initiating the action against Steve and Tiana.

{¶ 18} Attorney Pina was questioned further about the decision to remove Steve from the complaint. She reiterated that Dontae's decision to dismiss Steve from the action occurred after the original complaint was filed — "at some point

between April 11, 2018, and the filing of [the] first amended complaint on April 25, 2019." (Tr. 72.) Thereafter, between the filing of the first amended complaint and the filing of the second amended complaint, attorney Pina learned that Tiana had been invited to the birthday party by Dontae's wife. This information prompted attorney Pina to immediately remove the trespassing claim from the amended complaint.

{¶ 19} Attorney Pina was also questioned about certain discovery materials, including plaintiff's first set of answers to interrogatories, request for admissions, and requests for production of documents. Attorney Pina testified that she reviewed the posed discovery requests with Dontae, and that he signed a verification sheet on January 25, 2019. In relevant part, Dontae was asked to state with particularity the basis of his allegation in the complaint that "Steve Thomas proceeded to break all of the windows in Dontae Thomas's car, which was parked in the driveway." (Tr. 85.) Dontae's response to the posed interrogatory was "Steve admitted." (Tr. at *id.*)

{¶ 20} At the conclusion of the hearing, the trial court admitted several exhibits, including (1) time-stamped copies of the pleadings, (2) a copy of Dontae's deposition testimony, (3) copies of certain email correspondences, (4) copies of Dontae's verified responses to discovery requests, and (5) Dontae's affidavit.

{¶ 21} In November 2019, the trial court denied appellants' motion for attorney fees and sanctions, stating, in pertinent part:

> [T]he court finds that defendants failed to meet their burden in establishing that plaintiff's counsel willingly violated Civ.R. 11. Furthermore, based upon a review thereof, the court finds that neither

plaintiff's nor plaintiff's counsel's conduct rose to the level of that which is frivolous under R.C. 2323.51. Therefore, sanctions are not warranted and Defendants' motion for attorney fees and sanctions pursuant to Civ.R. 11 and R.C. 2323.51 is denied.

{¶ 22} Appellants now appeal from the trial court's judgment.

## II. Law and Analysis

### A. Admission of Dontae's Affidavit

{¶ 23} In their first assignment of error, appellants argue the trial court committed reversible error by permitting Dontae to submit an affidavit in lieu of live testimony. Appellants contend that the affidavit directly contradicted Dontae's prior deposition testimony and was material to the issue of sanctions. Thus, appellants assert that they were improperly deprived of the opportunity to cross-examine Dontae in person.

{¶ 24} Throughout their motion for attorney fees and sanctions, appellants argue that attorney Pina pursued legal claims against Steve without Dontae's permission. In support of this claim, appellants rely on portions of Dontae's deposition testimony, including his statement that he was not aware he filed a civil complaint against Steve and did not know Steve was still a named defendant because he told attorney Pina that the case was settled between him and Steve.

{¶ 25} In response to appellants' motion for attorney fees and sanctions, attorney Pina submitted an affidavit from Dontae, wherein he avers, in relevant part:

11. Following my arrest, I reached out to attorney Leslie Pina requesting that she represent me in defense of the criminal charges.

12. On or about April 10, 2018, the criminal charges were dismissed.

13.  On March 15, 2018, I retained, on a contingency basis, attorney Pina to bring a civil action against Steve Thomas and Tiana Murry.  A copy of the March 15, 2018 engagement letter is attached as Exhibit 1.

14.  On April 11, 2018, a complaint was filed on my behalf by attorney Pina in the above captioned matter.  A time/date stamped copy of the complaint is attached as Exhibit 2.

15.  Prior to the filing of the complaint, attorney Pina and I discussed the parties and the claims against each of the parties that would be asserted in the complaint.

16.  I had a good faith basis for each of the allegations and claims against Steve Thomas and Tiana Murry and the complaint was not brought merely to harass or maliciously injure Steve Thomas or Tiana Murry.

17.  Prior to the filing of the complaint, I knew of, consented to, and authorized the claims and allegations asserted against Steve Thomas and Tiana Murry in the complaint.

18.  Prior to the filing of the complaint, I was provided a copy of the complaint by attorney Pina, I read the complaint and, to the best of my knowledge, information and belief, I had good grounds to support the allegations and claims asserted in the complaint and none were asserted for the purpose of harassment or delay.

19.  A little over a year after filing the complaint, on April 25, 2019, an amended complaint was filed on my behalf by attorney Pina in the above captioned matter.  A time/date stamped copy of the first amended complaint is attached as Exhibit 3.

20.  In the year between the filing of the complaint and the first amended complaint, I resolved things with my brother, Steve Thomas, and no longer wanted to pursue an action against him.

21.  The first amended complaint removed Steve Thomas as a party, removed the claims against Steve Thomas * * * and reduced the damages from $15,000 to $12,000.

* * *

23.  It was through the deposition of Steve Thomas and Tiana Murry, along with subsequent conversations with my wife * * * that I learned Tiana Murry had been invited to the birthday party.

24.  On May 28, 2019, an amended complaint was filed on my behalf by attorney Pina in the above captioned matter.  A time/date stamped copy of the amended complaint is attached as Exhibit 4.

25.  The second amended complaint removed the trespass claim against Tiana Murry and reduced the damages from $12,000 to $10,000.

(Dontae's affidavit at ¶ 11-25.)

{¶ 26} Over appellants' objection, the trial court accepted the affidavit for review, stating:

So unless I didn't see it, I didn't see [Dontae] being subpoenaed to be here.  I'm going to accept the affidavit as to the motion that's pending.  I'll take it for what it's worth.

(Tr. 99.)

{¶ 27} Generally, the admission of evidence "lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice."  *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 62.  This court's review is limited to determining whether the trial court's evidentiary rulings were unreasonable, arbitrary, or unconscionable. *State v. Barnes*, 94 Ohio St.3d 21, 23, 759 N.E.2d 1240 (2002).

{¶ 28} Civ.R. 43, titled "taking testimony," contains the following provisions:

(A)  In open court.  At trial or hearing, the witnesses' testimony shall be taken in open court unless a statute, the Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise.  For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location.

(B) Evidence on a motion. When a motion relies on facts outside the record, the court may hear the matter on affidavits or may hear it wholly or partly on oral testimony or on depositions.

{¶ 29} Civ.R. 43 has rarely been interpreted by Ohio courts since its enactment in 2015. The rule was modeled on Fed.R.Civ.P. 43. Courts analyzing the analogous federal rule have held that it demonstrates a general preference for live testimony to ensure the opportunity for live cross-examination and observation of a witness's demeanor. *T&R Props. v. Wimberly*, 10th Dist. Franklin No. 19AP-567, 2020-Ohio-4279, ¶ 31, citing *Carter-Wallace, Inc. v. Otte*, 474 F.2d 529, 536 (2d Cir.1972). However, courts assessing identical versions of the language set forth under Civ.R. 43(B) have also recognized that

> [t]he rule grants the judge specific authority to direct the type of evidence he will hear on a motion. * * * Thus, it seems obvious that the judge, in his discretion, may allow the facts to be presented for the purpose of a motion either wholly or partly by affidavit, oral testimony or deposition or any combination thereof.

*Webb v. James*, 46 N.C.App. 551, 555, 265 S.E.2d 642 (1980); *Bucholz v. Hutton*, 153 F.Supp. 62, 66 (D.Mont.1957) (stating Fed.R.Civ.P. 43 provides that motions may be supported by affidavits, which may also be opposed by affidavits).

{¶ 30} Upon review of the record, we find the trial court did not abuse its discretion by permitting attorney Pina to submit Dontae's affidavit in support of the brief in opposition. In this case, appellants' motion for attorney fees and sanctions required the trial court to determine whether attorney Pina engaged in frivolous conduct in light of the facts and information provided to her at the time she filed the original complaint on Dontae's behalf. In its discretion, the trial court found that it

was appropriate to resolve the pending motion by allowing the parties to introduce a combination of oral testimony, affidavits, and depositions. While live testimony is favored, appellants were permitted to examine Dontae during his deposition and have presented relevant facts that challenge Dontae's credibility as a witness. As the Fifth District has recognized, "[t]he trial court has the discretion and is in the best position to select the kind of evidence necessary to make the findings required by R.C. 2323.51 and determine whether an award of attorney fees and costs is proper." *Ferron v. Video Professor, Inc.*, 5th Dist. Delaware No. 08-CAE-09-0055, 2009-Ohio-3133, ¶ 64.

{¶ 31} Moreover, to the extent appellants allege that Dontae's affidavit amounted to a "sham" because it contradicted his former deposition testimony, we are unpersuaded. We recognize that the Ohio Supreme Court has held that an affidavit contradicting former deposition testimony, characterized as a "sham affidavit," cannot, without explanation, create a genuine issue of fact sufficient to defeat a motion for summary judgment. *Pettiford v. Aggarwal*, 126 Ohio St.3d 413, 2010-Ohio-3237, 934 N.E.2d 913, ¶ 1, fn.1; *see also Turner v. Turner*, 67 Ohio St.3d 337, 617 N.E.2d 1123 (1993), paragraph one of the syllabus (an affidavit inconsistent with deposition testimony does not support a grant of summary judgment). The court explained that the "sham affidavit" rule prevents a party from surviving summary judgment simply "'by allowing one of its witnesses to contradict his [or her] own prior testimony.'" *Id.* at ¶ 36, quoting *Adelman-Tremblay v. Jewel Cos.*, 859 F.2d 517, 521 (7th Cir.1988). This case, however, does not involve a motion for

summary judgment, and appellants have not identified any precedent to extend the foregoing case law to the determination of whether an affidavit may be considered by a trial court in resolving a motion filed pursuant to R.C. 2323.51 and Civ.R. 11. Accordingly, we find appellants' argument goes to the credibility of Dontae's affidavit and not its admissibility. *Christian v. Wal-Mart Stores E., LP*, 5th Dist. Holmes No. 09CA014, 2010-Ohio-3040, ¶ 30 ("As a predicate, admissibility is distinct and separate from credibility.").

{¶ 32} Appellants' first assignment of error is overruled.

### B. Attorney Fees and Sanctions

{¶ 33} In their second assignment of error, appellants argue the trial court erred in determining that attorney Pina "did not engage in sanctionable conduct under R.C. 2323.51 and Civ.R. 11." Appellants contend that Dontae "made it clear in his deposition that there was no evidentiary support for the allegations contained in the complaint."

{¶ 34} Two separate mechanisms are provided in Ohio law for an aggrieved party to seek attorney fees for frivolous conduct — R.C. 2323.51 and Civ.R. 11. *In re Estate of O'Toole*, 8th Dist. Cuyahoga No. 108122, 2019-Ohio-4165, ¶ 22. While both R.C. 2323.51 and Civ.R. 11 authorize the award of attorney fees as a sanction for frivolous conduct, they present separate standards of proof and differ in application. *Id.*

{¶ 35} In this case, appellants sought sanctions under both R.C. 2323.51 and Civ.R. 11, raising the same arguments, namely, that Dontae's complaint had no legal or factual basis and was filed in bad faith.

### 1. R.C. 2323.51

{¶ 36} A motion for sanctions under R.C. 2323.51 requires a trial court to determine whether the challenged conduct constitutes frivolous conduct as defined in the statute, and, if so, whether any party has been adversely affected by the frivolous conduct. *Riston v. Butler,* 149 Ohio App.3d 390, 777 N.E.2d 857, ¶ 17 (1st Dist.2002). R.C. 2323.51 applies an objective standard in determining frivolous conduct, as opposed to a subjective one. *Bikkani v. Lee*, 8th Dist. Cuyahoga No. 89312, 2008-Ohio-3130, ¶ 22. The finding of frivolous conduct under R.C. 2323.51 is determined without reference to what the individual knew or believed. *Ceol v. Zion Indus., Inc.*, 81 Ohio App.3d 286, 289, 610 N.E.2d 1076 (9th Dist.1992).

{¶ 37} R.C. 2323.51(A)(2)(a) defines "frivolous conduct" as conduct that satisfies any of the following categories:

(i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.

(ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

(iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

(iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

R.C. 2323.51(A)(2)(a)(i)-(iv). Under R.C. 2323.51(B)(1), sanctions for frivolous conduct may include reasonable attorney fees. A trial court may make an award of attorney fees "against a party, the party's counsel of record, or both." R.C. 2323.51(B)(4).

{¶ 38} R.C. 2323.51 was not intended to punish mere misjudgment or tactical error. *Turowski v. Johnson*, 70 Ohio App.3d 118, 123, 590 N.E.2d 434 (9th Dist.1991). Instead, the statute was designed to chill egregious, overzealous, unjustifiable, and frivolous action. *Turowski v. Johnson*, 68 Ohio App.3d 704, 706, 589 N.E.2d 462 (9th Dist.1990). The statute serves to deter abuse of the judicial process by penalizing sanctionable conduct that occurs during litigation. *Filonenko v. Smock Constr., L.L.C.*, 10th Dist. Franklin No. 17AP-854, 2018-Ohio-3283, ¶ 14.

{¶ 39} A R.C. 2323.51 determination to impose sanctions involves a mixed question of law and of fact. *Resources for Healthy Living, Inc. v. Haslinger*, 6th Dist. Wood No. WD-10-073, 2011-Ohio-1978, ¶ 26. We review purely legal questions de novo. *Riston*, 149 Ohio App.3d 390, 2002-Ohio-2308, 777 N.E.2d 857, at ¶ 22. On factual issues, however, "we give deference to the trial court's factual determinations because the trial judge, of course, will have had the benefit of observing the entire course of proceedings and will be most familiar with the parties and attorneys involved." *Estate of O'Toole*, 8th Dist. Cuyahoga No. 108122, 2019-Ohio-4165, at ¶ 30, citing *Riston* at ¶ 25. The ultimate decision as to whether to

grant sanctions under R.C. 2323.51 rests within the sound discretion of the trial court. *State ex rel. Striker v. Cline*, 130 Ohio St.3d 214, 2011-Ohio-5350, 957 N.E.2d 19, ¶ 11.

### a. R.C. 2323.51(A)(2)(a)(i)

{¶ 40} In this case, appellants' motion for sanctions predominately argued that attorney Pina pursued this lawsuit for the purpose of harassing or maliciously injuring both Tiana and Steve. *See* R.C. 2323.51(A)(2)(a)(i). Citing portions of Dontae's deposition testimony, appellants asserted that attorney Pina filed "this action without the permission of her client," thereby causing appellants to incur significant legal costs.

{¶ 41} Analysis of whether a complaint was filed with malicious intent under R.C. 2323.51(A)(2)(a)(i) requires a factual determination. *Walters v. Carter*, 8th Dist. Cuyahoga No. 108555, 2020-Ohio-807, ¶ 22, citing *Lable & Co. v. Flowers*, 104 Ohio App.3d 227, 233, 661 N.E.2d 782 (9th Dist.1995). Thus, we must defer to the trial court's resolution of the relevant facts.

{¶ 42} Undoubtedly, Dontae testified during his deposition that (1) he did not approve a complaint naming Steve as a defendant, (2) he and Steve resolved the issue privately, (3) he and his wife did not ask Tiana to leave the birthday party, and (4) he does not believe Steve was a false witness against him. However, viewing the record in its entirety, it is evident that Dontae's testimony contained various inconsistencies and reflected a general misunderstanding of the procedural status of his case. In this regard, it is important to note that Dontae was questioned

throughout his deposition about the original complaint and the allegations raised therein. The original complaint, which named Steve as a defendant, was amended to remove Steve as a party the day before Dontae's deposition was held. Thus, it was reasonable for Dontae to express confusion when asked about Steve's involvement in the case because he was under the impression that Steve was no longer a named defendant — which he was not. And, despite stating that the decision to name Steve in the original complaint must have been based on a "miscommunication" with attorney Pina, Dontae later conceded that he was familiar with the lawsuit initially filed against Steve. (Dontae's depo. tr. 31, 36-37, 51.)

{¶ 43} As discussed, Dontae executed an affidavit in an effort to clarify his deposition testimony. In relevant part, Dontae averred that (1) he retained attorney Pina to bring a civil action against Steve Thomas and Tiana Murry; (2) he and attorney Pina discussed the parties and the claims against each of the parties that would be asserted in the complaint; (3) he had a good-faith basis for each of the allegations and claims against Steve and Tiana; (4) the complaint was not brought merely to harass or maliciously injure Steve or Tiana; (5) he read and reviewed the original complaint before it was filed; (6) he authorized attorney Pina to file the original complaint against Steve and Tiana; (7) he resolved things with Steve and no longer wanted to pursue an action against him after the original complaint had been filed; and (8) he learned Tiana had been invited to the birthday party after the original complaint had been filed.

{¶ 44} While Dontae expressed confusion regarding the status of his case during his deposition, appellants have failed to demonstrate that attorney Pina acted without the authority of her client. Rather, the evidence adduced during the sanctions hearing reflects that Dontae executed a retention letter with attorney Pina for the purpose of pursuing legal action against both Steve and Tiana based on their conduct during, and subsequent to, the altercation at his home. Attorney Pina further testified that she personally reviewed the complaint with Dontae, and her statements are corroborated by Dontae's verified discovery responses that were executed well after the original complaint was filed against Steve and Tiana. Attorney Pina concedes that Dontae ultimately determined to withdraw his claims against Steve. However, she maintains, and Dontae's affidavit confirms, that the decision to remove Steve from the case was made after the original complaint was filed. Under these circumstances, we find appellants have not presented credible evidence that attorney Pina filed the original complaint against Steve and/or Tiana for the purpose of harassing or maliciously injuring either of the defendants.

{¶ 45} Alternatively, appellants argue that "even if [this court] were to accept attorney Pina's claim that she had her client's permission to file the action, she certainly did not have Dontae's permission to maintain the lawsuit for as long as she did." Appellants note that attorney Pina notified opposing counsel of Dontae's intent to dismiss the case against Steve in January 2019, but he was not removed from the case until April 2019. We are unpersuaded by appellants' position. While attorney Pina did not immediately dismiss the claims against Steve, the record

reflects that the brief delay was premised on attorney Pina's desire to complete outstanding discovery before filing the amended complaint. Absent speculation, there is no evidence to suggest attorney Pina was motivated by a desire to cause unnecessary delay or a needless increase in the cost of litigation.

{¶ 46} Deferring to the trial court's factual determinations and assessment of credibility, we are unable to conclude that the trial court abused its discretion in determining that the original complaint was not filed for the purpose identified in R.C. 2323.51(A)(2)(a)(i). *Cruz v. English Nanny & Governess School, Inc.*, 2017-Ohio-4176, 92 N.E.3d 143, ¶ 112 (8th Dist.) ("The trial court is in the best position to appraise the conduct of the parties, and we must defer to the trial court's ruling on the motion for sanctions.").

### b. R.C. 2323.51(A)(2)(a)(ii) and (iii)

{¶ 47} Finally, appellants' motion for sanctions pursued recourse under R.C. 2323.51(A)(2)(a)(ii) and (iii), arguing that the complaint set forth claims that were either legally or factually unsupported.

{¶ 48} As stated, frivolous conduct implicated by R.C. 2323.51(A)(2)(a)(ii) involves proceeding on a legal theory that is wholly unwarranted in law. "In determining whether a claim is frivolous under R.C. 2323.51(A)(2)(a)(ii), the test is objective — whether no reasonable lawyer would have brought the action in light of the existing law." *Internatl. Union of Operating Engineers, Local 18 v. Laborers' Internatl. Union of N. Am., Local 310*, 8th Dist. Cuyahoga No. 104774, 2017-Ohio-1055, ¶ 15, citing *Orbit Elecs., Inc. v. Helm Instrument Co.*, 167 Ohio App.3d 301,

2006-Ohio-2317, 855 N.E.2d 91, ¶ 49 (8th Dist.). A claim is therefore frivolous "'if it is absolutely clear under the existing law that no reasonable lawyer could argue the claim.'" *Orbit* at *id.*, quoting *Hickman v. Murry*, 2d Dist. Montgomery No. CA 15030, 1996 Ohio App. LEXIS 1028, 14 (Mar. 22, 1996). Because this is a question of law, we review the trial court's determination regarding this prong of the statute de novo. *Pingue v. Pingue*, 5th Dist. Delaware No. 06-CAE-10-0077, 2007-Ohio-4818, ¶ 20.

{¶ 49} In turn, R.C. 2323.51(A)(2)(a)(iii) involves "conduct [that] consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." "An allegation or factual contention needs only minimal evidentiary support in order for a party or its attorney to avoid a frivolous conduct finding under R.C. 2323.51(A)(2)(a)(iii)." *Southard Supply, Inc. v. Anthem Contrs., Inc.*, 10th Dist. Franklin No. 16AP-545, 2017-Ohio-7298, ¶ 14, citing *Carasalina L.L.C. v. Bennett*, 10th Dist. Franklin No. 14AP-74, 2014-Ohio-5665, ¶ 36. "If a party makes an allegation or factual contention on information or belief, then the party must have the opportunity to investigate the truth of that allegation or factual contention. However, if a party persists in relying on that allegation or factual contention when no evidence supports it, then the party has engaged in frivolous conduct under R.C. 2323.51(A)(2)(a)(iii)." *Carasalina* at ¶ 36.

{¶ 50} Whether conduct is frivolous under R.C. 2323.51(A)(2)(a)(iii) presents a factual question. *Southard Supply* at ¶ 14. Accordingly, we afford the trial court a degree of deference and will not reverse it unless the record lacks competent, credible evidence to support the trial court's finding. *Id.* at ¶ 14-15.

{¶ 51} With R.C. 2323.51(A)(2)(a)(ii) and (iii) in mind, we analyze each cause of action pursued in this case

### i. Defamation

{¶ 52} In the original complaint, Dontae set forth a claim of defamation against Tiana and Steve. Dontae alleged that Tiana made false statements to the police that caused him to be arrested and incarcerated for four days. The original complaint further alleged that Steve "collaborated with [Tiana] by publishing the false story and by volunteering as the sole witness for [Tiana's] defamatory claims and fabricated police report." (Original complaint ¶ 17.) The amended complaint and second amended complaint restated the defamation claim against Tiana, while excluding Steve as a named defendant.

{¶ 53} "'[D]efamation occurs when a publication contains a false statement made with some degree of fault, reflecting injuriously on a person's reputation[.]'" *Lewandowski v. Penske Auto Group,* 8th Dist. Cuyahoga No. 94377, 2010-Ohio-6160, ¶ 25, quoting *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, 883 N.E.2d 1060, ¶ 9. To establish the prima facie case of defamation, "'a plaintiff must show (1) a false statement of fact was made about the plaintiff; (2) the statement was defamatory; (3) the statement was published; (4) the plaintiff suffered injury as a

proximate result of the publication; and (5) the defendant acted with the requisite degree of fault in publishing the statement.'" *Johnson v. Johnson*, 8th Dist. Cuyahoga No. 108420, 2020-Ohio-1381, ¶ 16, quoting *Sullins v. Raycom Media, Inc.*, 2013-Ohio-3530, 996 N.E.2d 553, ¶ 15 (8th Dist.).

{¶ 54} On appeal, appellants argue, pursuant to R.C. 2323.51(A)(2)(a)(ii), that counsel for Dontae engaged in frivolous conduct by filing a defamation claim that was not warranted under existing law and could not be supported by a good faith argument for an extension, modification, or reversal of existing law. Appellants do not challenge the defamatory nature of the alleged statements to the police. Rather, appellants assert that the claim was not warranted under existing law because "the law provides an absolute privilege to individuals making a report to the police."

{¶ 55} In the context of a defamation claim that is predicated on a report of criminal conduct to the police, the distinction between the doctrines of absolute privilege and qualified privilege is significant. The Supreme Court of Ohio explained the rationale for affording privilege to certain statements, and clarified the distinction between the qualified and absolute privilege as follows:

> Upon certain privileged occasions where there is a great enough public interest in encouraging uninhibited freedom of expression to require the sacrifice of the right of the individual to protect his reputation by civil suit, the law recognizes that false, defamatory matter may be published without civil liability. * * *
>
> Such privileged occasions have by long judicial history been divided into two classes — occasions absolutely privileged and those upon which the privilege is only a qualified one. The distinction between

these two classes is that the absolute privilege protects the publisher of a false, defamatory statement even though it is made with actual malice, in bad faith and with knowledge of its falsity; whereas the presence of such circumstances will defeat the assertion of a qualified privilege. * * *

*M.J. DiCorpo, Inc. v. Sweeney*, 69 Ohio St.3d 497, 505, 634 N.E.2d 203 (1994), quoting *Bigelow v. Brumley*, 138 Ohio St. 574, 579-580, 37 N.E.2d 584 (1941).

{¶ 56} Consistent with the appellants' position on appeal, several appellate districts have concluded that "absolute privilege should apply to those who report criminal activity to police officers" if the statements "bear some reasonable relation to the activity reported." *Lasater v. Vidahl*, 2012-Ohio-4918, 979 N.E.2d 828, ¶ 9 (9th Dist.); *Brown v. Chesser*, 4th Dist. Vinton No. 97 CA 510, 1998 Ohio App. LEXIS 352, 4 (Jan. 16, 1998).

{¶ 57} Contrary to the forgoing precedent, however, this court has determined that statements to police officers are entitled only to a qualified privilege, and not an absolute privilege, because such statements are not made in the context of a judicial proceeding. *Scott v. Patterson*, 8th Dist. Cuyahoga No. 81872, 2003-Ohio-3353, ¶ 11-12. *See also Mango v. Columbus*, S.D.Ohio Nos. 2:19-cv-3120 and 2:19-cv-5282, 2020 U.S. Dist. LEXIS 161340, 48 (Sept. 3, 2020) (noting that *Scott* is consistent with a majority of state courts that extend qualified rather than absolute immunity to persons making statements to police about alleged crimes). Thus, this court has explained that

"'[a]ny communications made by private citizens to law enforcement personnel for the prevention or detection of crime are qualifiedly

privileged and may not serve as the basis for a defamation action *unless it is shown that the speaker was motivated by actual malice.*'"

(Emphasis added.) *Allen v. Pirozzoli*, 8th Dist. Cuyahoga No. 103632, 2016-Ohio-2645, ¶ 14, quoting *Lewandowski*, 8th Dist. Cuyahoga No. 94377, 2010-Ohio-6160, at ¶ 26, quoting *Oswald v. Action Auto Body & Frame, Inc.*, 8th Dist. Cuyahoga No. 71089, 1997 Ohio App. LEXIS 1642, 8 (Apr. 24, 1997). In other words, a qualified privilege may be defeated if a claimant proves with convincing clarity that the speaker acted with actual malice. *Jacobs v. Frank*, 60 Ohio St.3d 111, 573 N.E.2d 609 (1991), paragraph two of the syllabus. In the context of a qualified privilege, "actual malice" is defined as "acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." *Lewandowski* at ¶ 26.

{¶ 58} After careful consideration, we find Dontae's defamation claim was warranted under existing law. While the factual basis supporting the defamation claim relies on a report of criminal activity to the Cleveland Heights police, Dontae maintained throughout the proceedings that, as a result of the knowingly false statements to the police, he was arrested for acts he did not commit. For this reason, the defamation claim unambiguously alleged that Tiana provided an incriminating statement to the police, with Steve's collaboration, with knowledge that the defamatory statement was false. We interpret the language set forth in the amended complaint as an assertion that the statement was made with actual malice, thereby avoiding the preclusive effect of qualified privilege. *See id.* at ¶ 29; *Johnson*, 8th Dist. Cuyahoga No. 108420, 2020-Ohio-1381, at ¶ 21. Under these circumstances,

the trial court did not abuse its discretion when it determined that an objective, reasonably attorney could have brought the defamation cause of action in light of the existing law.

## ii.  Malicious Destruction of Property

{¶ 59} In the original complaint, Dontae pursued a claim for malicious destruction of property against Steve, alleging:

> Steve Thomas intentionally and maliciously bashed in and destroyed all of Dontae Thomas's car windows.  Dontae Thomas filed a complaint with the Cleveland Heights Police.

(Original complaint ¶ 19.)  The claim was subsequently removed from the action, and Steve was no longer named as a defendant in the amended and second amended complaints.

{¶ 60} Relying on R.C. 2323.51(A)(2)(a)(ii) and (iii), appellants argue that the malicious destruction of property claim was frivolous because there is "no legal or factual basis for this claim."  Appellants do not support their argument with legal analysis or citation to relevant case law.  Nevertheless, we are unpersuaded by the appellants' position.

{¶ 61} Ohio courts routinely recognize civil actions for injury to personal property.  As set forth in R.C. 2307.011(J), a "tort action" is defined as "a civil action for damages for injury, death, or loss to person or property."  "This definition is broad and does not require that the cause of action be based in common law as opposed to statute."  *Gurry v. C.P.,* 2012-Ohio-2640, 972 N.E.2d 154, ¶ 13 (8th Dist.).  As recognized by this court, "a 'tort action' is present where one brings a

private cause of action for property damage." *Id.* Moreover, it is well settled that Ohio law allows alleged victims of criminal acts to bring civil suits against the wrongdoer. R.C. 2307.60(A)(1), for instance, "creates a statutory cause of action for damages resulting from any criminal act." *Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434, 75 N.E.3d 203, ¶ 10. "[T]he plain language of the statute does not require proof of an underlying criminal conviction." *Buddenberg v. Weisdack*, Slip Opinion No. 2018-1209, 2020-Ohio-3832, ¶ 11.

{¶ 62} In this case, the record demonstrates that Dontae's car windows were damaged during the physical altercation at his home. Dontae was required to replace his car windows and believed Steve intentionally caused the property damage based on information provided by third parties. As such, Dontae filed a criminal police report, "asserting that my brother, Defendant Steve Thomas, intentionally broke the windows of my car." (Dontae's affidavit at ¶ 7.) Based on the foregoing information, which was provided to attorney Pina at the time the original complaint was filed, we find the trial court did not abuse its discretion when it determined Dontae's claim did not lack evidentiary support and could have been brought by a reasonable attorney. Regardless of Dontae's characterization of Steve's conduct as malicious, Dontae was permitted to pursue a civil action against Steve to recover damages for the injury to his personal property.

### iii. Malicious Prosecution

{¶ 63} In the original complaint, Dontae set forth a claim for malicious prosecution against Tiana. Dontae alleged that as a result of Tiana's false statements

to the police "a warrant was issued for [his] arrest" and he "was arrested by Cleveland Heights police and * * * was incarcerated from October 27, 2017 until October 30, 2017, when he was then released on bail." (Original complaint ¶ 21.) Dontae restated the claim against Tiana in the amended and second amended complaints.

{¶ 64} The claim of malicious criminal prosecution allows the complainant to seek redress for harm to complainant's dignity and reputation occasioned by the misuse of criminal proceedings. *Froehlich v. Ohio Dept. of Mental Health*, 114 Ohio St.3d 286, 2007-Ohio-4161, 871 N.E.2d 1159, ¶ 9, citing T*russell v. Gen. Motors Corp.*, 53 Ohio St.3d 142, 559 N.E.2d 732 (1990). In order to establish a claim for malicious prosecution, a plaintiff must prove (1) malice in initiating or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused. *Frazier v. Clinton Cty. Sheriff's Office*, 12th Dist. Clinton No. CA2008-04-015, 2008-Ohio-6064, ¶ 14. "The absence of probable cause is the gist of an action for malicious prosecution, and malice may be inferred from the absence of probable cause." *Brand v. Geissbuhler*, 8th Dist. Cuyahoga No. 70565, 1997 Ohio App. LEXIS 709, 14 (Feb. 27, 1997).

{¶ 65} Under Ohio law, a "private person who initiates or procures the institution of criminal proceedings against another is not subject to liability unless the person against whom the criminal proceedings were initiated proves all * * * of the above-listed elements" of malicious prosecution. *Ash v. Ash*, 72 Ohio St.3d 520, 522, 651 N.E.2d 945 (1995). *See also Patterson*, 8th Dist. Cuyahoga No. 81872,

2003-Ohio-3353, at ¶ 12 ("a private individual may be held civilly liable for the initiation of a criminal proceeding only if the information is false or if the individual's desire to have the proceedings initiated was the determining factor in the commencement of the prosecution."), citing *Archer v. Cachat*, 165 Ohio St. 286, 287-88, 135 N.E.2d 404 (1956).

{¶ 66} Contrary to the arguments presented by the appellants, our review is not concerned with whether there were sufficient facts for Dontae to prevail on his claim. "A party's conduct is not frivolous simply because a claim is not well-grounded in fact or impervious to dispute." *Conneaut, Ohio v. Buck*, 11th Dist. Ashtabula No. 2014-A-0053, 2015-Ohio-2593, ¶ 35. In this case, the basis of the malicious prosecution claim was that Tiana falsely accused Dontae of participating in her assault, that there was absence of probable cause where Tiana made the accusations knowing that they were false, and that the false accusations were a determining factor in the decision to initiate criminal proceedings against Dontae. Although Dontae did not specifically assert that Tiana acted with "actual malice," the pleadings were sufficient for the trial court to determine that the malicious prosecution claim was supported by factual allegations and presented a legal theory that is warranted in law. We find no abuse of discretion.

### iv. Civil Trespass

{¶ 67} In the original and amended complaint, Dontae pursued a civil trespass claim against Tiana, alleging as follows:

> Tiana Murry knew she was neither invited nor welcomed at the party on Revere Rd., the home of Dontae Thomas and family; nevertheless, she "crashed" the party.
>
> Her trespass resulted in intentional disruption and assault of guests at the otherwise peaceful party.
>
> Her trespass caused physical and/ or emotional damage to guests as well as warrants issued for the arrest of six guests, including his wife, Deanna Thomas.

(Original complaint ¶ 28-29; amended complaint ¶ 21-23.) In May 2019, the trespass claim was removed from the action upon the filing of the second amended complaint.

{¶ 68} On appeal, appellants argue that the civil trespass claim relied on false factual assertions and, therefore, was frivolously filed. Appellants reference portions of Dontae's deposition testimony, including his admissions that (1) he never told Tiana not to come to his home, (2) he did not ask Tiana to leave his home when he saw her at the party, and (3) to his knowledge, his wife did not ask Tiana to leave the party.

{¶ 69} "Trespass is the unlawful entry upon the property of another." *Chance v. BP Chems., Inc.*, 77 Ohio St.3d 17, 24, 670 N.E.2d 985 (1996). Thus, the elements of trespass are "(1) an unauthorized intentional act, and (2) entry upon land in the possession of another." *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 716, 622 N.E.2d 1153 (4th Dist.1993).

{¶ 70} We recognize that, based upon Dontae's own deposition testimony, the original and amended complaints' factual assertion that Tiana "crashed" the party was ultimately discovered to be inaccurate. However, "frivolous conduct is not

proved merely by winning a legal battle or by proving that a party's factual assertions were incorrect." *State ex rel. DiFranco v. S. Euclid*, 144 Ohio St.3d 571, 2015-Ohio-a4915, 45 N.E.3d 987, ¶ 15, citing *Ohio Power Co. v. Ogle*, 4th Dist. Hocking No. 12CA14, 2013-Ohio-1745, ¶ 29-30 ("a party is not frivolous merely because a claim is not well-grounded in fact."). As previously stated, R.C. 2323.51(A)(2)(a)(iii) has been construed to mean that "a party only needs minimal evidentiary support for its allegations or factual contentions to avoid a frivolous conduct finding." *Southard Supply*, 10th Dist. Franklin No. 16AP-545, 2017-Ohio-7298, at ¶ 14, citing *Carasalina*, 10th Dist. Franklin No. 14AP-74, 2014-Ohio-5665, at ¶ 36. *See also Eastwood v. Eastwood*, 9th Dist. Summit No. 25310, 2010-Ohio-6492, ¶ 15 ("R.C. 2323.51(A)(2)(a)(iii) authorizes the trial court to sanction the filing of a motion only if it has *no* evidentiary support"). (Emphasis sic.)

{¶ 71} In this case, we find there was, at the very least, minimal evidence supporting the elements of the civil trespass claim pursued against Tianna at the time the claim was filed. Dontae expressed in his affidavit that he discussed the relevant circumstances with attorney Pina prior to the filing of the civil action and notified her that Tiana was not invited to his home on the night of the incident. (Dontae's affidavit ¶ 15, 23.) Attorney Pina testified that she completed "an independent investigation of the contents of the complaint," independently researched the law supporting the trespass claim, and had, based on the information provided by the owner of the property in question, sufficient evidence to "justify" the factual allegation that Tiana unlawfully entered the property of another. (Tr. 61-66.)

Once it became readily apparent that the civil trespass claim lacked evidentiary support based on the information subsequently gathered during the discovery process, a second amended complaint was immediately filed to remove the trespass claim against Tiana.

{¶ 72} Deferring to the trial court's assessment of the facts and evidence supporting the trespass claim at the time it was included in the original and amended complaints, we find the trial court did not abuse its discretion in determining that the filing of the claim did not amount to frivolous conduct.

### v. Aiding and Abetting Malicious Prosecution

{¶ 73} In the original complaint, Dontae set forth a cause of action for aiding and abetting malicious prosecution against Steve. Dontae alleged as follows:

> Steve Thomas supported all of the false statements made by Tiana Murry; he served as a false witness against Dontae Thomas and the other accused; and his name appears as such on the incident report.

(Original complaint ¶ 26.)

{¶ 74} The modern application of civil aiding and abetting can be traced to the Second Restatement of Torts: "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he [or she] * * * knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself [or herself]." 4 Restatement of the Law 2d, Torts, Section 876(b) (1979).

{¶ 75} However, in *DeVries Dairy, L.L.C. v. White Eagle Coop. Assn., Inc.,* 131 Ohio St.3d 1436, 2012-Ohio-331, 960 N.E.2d 986, the Supreme Court of Ohio

accepted the following question of state law certified to it by the United States District Court for the Northern District of Ohio:

> Under the applicable circumstances, does Ohio recognize a cause of action for tortious acts in concert under the Restatement (2d) of Torts, § 876?

{¶ 76} In answering the certified question in the negative, the Supreme Court of Ohio noted that the state of Ohio "has never recognized a claim under 4 Restatement 2d Torts, Section 876 (1979)." *Id.* at ¶ 2. Thus, the court unambiguously concluded that the state of Ohio does not recognize a cause of action for aiding and abetting a tortious act. *Id.*; *see also Wells Fargo Bank v. Smith*, 12th Dist. Brown No. CA2012-04-006, 2013-Ohio-855, ¶ 36.

{¶ 77} Under these circumstances, we find Dontae's aiding and abetting claim against Steve was not supported by existing law. A clear reading of *DeVries* mandates the conclusion that "no reasonable attorney could have brought the action in light of the existing law." In this case, the record of the sanction hearing reflects that attorney Pina pursued the claim on Dontae's behalf based on an inaccurate reading of the current law in Ohio. (Tr. 66.) As discussed further below, "misinterpreting the state of existing law" is a valid defense against charges of "willful" violations of Civ.R. 11. However, such negligence is potentially subject to R.C. 2323.51(A)(2)(b) regardless of whether the party or attorney otherwise acted in good faith. By the plain terms of the statute, conduct which "is not warranted under existing law" is frivolous unless a finding is also made that the position can "be supported by a good faith argument for an extension, modification, or reversal of

existing law." In this case, attorney Pina conceded at the sanctions hearing that she did not pursue the claim with a good faith basis to extend, modify, or reverse existing law:

> COUNSEL FOR ATTORNEY PINA: [Defense counsel] pointed out that aiding and abetting malicious prosecution, there was no law to it and you testified that you must have misread it?
>
> ATTORNEY PINA: Right.
>
> COUNSEL FOR ATTORNEY PINA: So when you filed your aiding and abetting of a malicious prosecution claim did you feel that there were allegations or, rather, factual contentions that had the ability for an extension or modification of the law?
>
> ATTORNEY PINA: No.

(Tr. 70.)

{¶ 78} Accordingly, we find the trial court abused its discretion by determining that the aiding and abetting malicious prosecution claim was warranted under existing law. "A cursory review, prior to the filing of the complaint, would have uncovered the current state of case law relating to these matters." *Newman v. Weinman,* 2012-Ohio-3464, 985 N.E.2d 161, ¶ 39 (8th Dist.). As such, the pursuit of this unwarranted claim amounted to frivolous conduct within the meaning of R.C. 2323.51(A)(2)(a)(ii).

{¶ 79} Having found the existence of frivolous conduct, we note that

> the decision to assess or not to assess a penalty lies within the sound discretion of the trial court. *Sain v. Roo*, 10th Dist. Franklin No. 01AP-360, 2001 Ohio App. LEXIS 4740 (Oct. 23, 2001), citing *Wiltberger v. Davis*, 110 Ohio App.3d 46, 52, 673 N.E.2d 628 (1996). Accordingly, it is not within this court's province to decide, in the first instance, whether sanctions should be imposed.

*L&N Partnership v. Lakeside Forest Assn.*, 183 Ohio App.3d, 2009-Ohio-2987, 916 N.E.2d 500, ¶ 51 (10th Dist.).  Therefore, the cause is remanded to the trial court to determine what amount, if any, of reasonable attorney fees necessitated by the frivolous conduct is to be awarded to the aggrieved party.

### vi.  Damages

{¶ 80} Finally, appellants argue attorney Pina engaged in frivolous conduct by filing a civil action that sought damages that were not supported by fact or law. We find no merit to appellants' argument.

{¶ 81} In this case, the damages requested in this case stemmed from allegedly tortious conduct that resulted in injury to Dontae and his personal property.  Although Dontae's deposition testimony focused on the money expended by others to bail him out of jail following his arrest, the nonfrivolous claims for defamation, malicious prosecution, civil trespass, and malicious destruction of property set forth sufficient facts that, if proven successful, may have entitled Dontae to damages.  *See* R.C. 2315.18 through 2315.21.  Dontae's deposition testimony did not render these claims frivolous merely because he was unable to articulate the legal basis supporting the damages requested in the original and amended complaints.

### 2. Civ.R. 11

{¶ 82} Civ.R. 11, which governs the signing of pleadings, motions, and other documents, reads, in pertinent part:

> The signature of an attorney or pro se party constitutes a certificate by
> the attorney or party that the attorney or party has read the document;

that to the best of the attorney's or party's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. If a document is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the document had not been served. For a willful violation of this rule, an attorney or pro se party, upon motion of a party or upon the court's own motion, may be subjected to appropriate action, including an award to the opposing party of expenses and reasonable attorney fees incurred in bringing any motion under this rule. * * *

{¶ 83} When a party files a motion for sanctions under Civ.R. 11, the trial court must determine whether the attorney who signed the document "(1) has read the pleading, (2) harbors good grounds to support it to the best of his or her knowledge, information, and belief, and (3) did not file it for the purposes of delay." *Ceol.*, 81 Ohio App.3d 286, at 290, 610 N.E.2d 1076 (9th Dist.1992). If the trial court finds the attorney did not satisfy one of the above requirements, the next inquiry is whether the violation was willful or simply negligent. *Id.* Where the attorney's actions are willful, the trial court may impose sanctions. *Id.* The trial court imposes a subjective "bad faith" standard when determining whether the violation was willful. *Id.* at 291. The Ohio Supreme Court has described "bad faith" as

a general and somewhat indefinite term. It has no constricted meaning. It cannot be defined with exactness. It is not simply bad judgment. It is not merely negligence. It imports a dishonest purpose or some moral obliquity. It implies conscious doing of wrong. It means a breach of a known duty through some motive of interest or ill will. It partakes of the nature of fraud. * * * It means "with actual intent to mislead or deceive another."

*Slater v. Motorists Mut. Ins. Co.*, 174 Ohio St. 148, 151, 187 N.E.2d 45 (1962), *overruled on other grounds*, *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 644 N.E.2d 397 (1994).

{¶ 84} The decision to grant or deny sanctions under Civ.R. 11 rests within the sound discretion of the trial court. *Bikkani*, 8th Dist. Cuyahoga No. 89312, 2008-Ohio-3130, at ¶ 30. Absent an abuse of discretion, a reviewing court will not reverse a trial court's decision to grant or deny sanctions. *Grimes v. Oviatt*, 2019-Ohio-1365, 135 N.E.3d 378, ¶ 20 (8th Dist.).

{¶ 85} As stated, a legal and factual basis existed for Dontae's claims for defamation, malicious prosecution, civil trespass, and malicious destruction of property. While appellants contend that the complaint was filed in an effort to perpetrate extortion, the record supports attorney Pina's testimony that she read each filing submitted on Dontae's behalf, had sufficient grounds and a good faith basis to support these claims, and did not file these claims for the purpose of harassment or delay. To the extent we have determined that attorney Pina did not harbor good grounds to file the aiding and abetting claim, we are unable to conclude that attorney Pina's conduct evidenced a willful or bad-faith violation of Civ.R. 11. Attorney Pina's testimony during the sanction hearing and Dontae's affidavit attached in support demonstrate that the filing of the claim was predicated on attorney Pina's own misinterpretation of the law governing aiding and abetting tortious conduct in Ohio. At most, the record establishes that attorney Pina acted negligently — without a dishonest purpose or conscious doing of wrong. Accordingly, we find the trial court did not abuse its discretion when it denied appellants' motion for sanctions under Civ.R. 11.

{¶ 86} Appellants' second assignment of error is overruled in part and sustained in part.

{¶ 87} Judgment affirmed in part, reversed in part. The matter is remanded to the trial court to address the frivolous aiding and abetting claim filed against Steve in the original complaint.

It is ordered that appellants and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the municipal court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
MARY EILEEN KILBANE, J., CONCUR