[Cite as *Allan v. Tallan, L.L.C.*, 2025-Ohio-3145.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

QAIS ALLAN, :

    Plaintiff-Appellee, :

                            No. 114618

    v. :

TALLAN, LLC, ET AL., :

    Defendants-Appellants. :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 4, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-925187

---

***Appearances:***

Dinn, Hochman & Potter, LLC, Edgar H. Boles, and Andrew J. Yarger, *for appellee.*

Raslanpla & Company, LLC, Jorge Luis Pla, Nadia R. Zaiem, and Erika Molnar, *for appellant.*

DEENA R. CALABRESE, J.:

{¶ 1} Defendant-appellant Raida Allan ("Raida"), who prevailed in a bench trial, appeals the trial court's judgment denying her motion for sanctions against plaintiff-appellee Qais Allan ("Qais"). More specifically, Raida contends the trial

court abused its discretion by summarily denying her motion for sanctions without first holding a hearing.

{¶ 2} The parties' financial entanglements and ensuing conflicts have been the subject of numerous cases over the course of ten years and counting. Those disputes have resulted, to date, in six opinions from this court. Two opinions addressed separate appeals from domestic relations court judgments. *Allan v. Allan*, 2019-Ohio-2111 (8th Dist.) ("*Allan I*"); *T.A. v. R.A.*, 2019-Ohio-3179 (8th Dist.) ("*Allan II*"). A third opinion concerned an appeal from a common pleas court judgment, in consolidated commercial-docket cases, regarding alleged fraudulent transfers. *Allan v. Allan*, 2022-Ohio-1488 (8th Dist.) ("*Allan III*").[1] Three additional opinions stemmed from original actions, specifically, a writ of prohibition brought by Qais against a domestic relations judge, a writ of procedendo brought by Raida against a common pleas court judge, and a second writ of procedendo brought by Raida against the trial court judge in this very action. *Allan v. Palos*, 2016-Ohio-3073 (8th Dist.); *State ex rel. Allan v. Kelley*, 2023-Ohio-3892 (8th Dist.); *State ex rel. Allan v. Mooney*, 2024-Ohio-6197 (8th Dist.).

{¶ 3} Despite this extensive litigation history (with the parties herein on alternating sides of the "v.") and the currently pending separate appeal involving a related course of financial transactions, Raida argues that Qais's complaint in the

---

[1] This court's decision in *Allan III* led to a remand, a ten-day jury trial resulting in a verdict in Raida's favor, but then a trial court entry granting a Civ.R. 50(B) judgment notwithstanding the verdict. The trial court's judgment notwithstanding the verdict decision is the subject of a separate appeal in 8th Dist. Cuyahoga No. 114193.

present case was so obviously frivolous that no reasonable attorney would have filed it on Qais's behalf. This, despite the fact that the trial court denied the parties' cross-motions for summary judgment (implicitly concluding that genuine issues of material fact remained to be litigated and that neither party was entitled to judgment as a matter of law), the fact that the trial court ultimately held a bench trial spanning three days and producing a 480-page transcript, and the fact that the trial court's judgment included not only credibility findings but also legal conclusions based on affirmative defenses not explicitly pleaded until the bench trial itself, where the trial court granted a last-minute motion to amend the answer. We find no merit to the appeal.

## I. Factual and Procedural Background

### A. Previous Cases

{¶ 4} The disputes giving rise to the parties' various lawsuits stem from a series of financial transactions that took place while divorce proceedings were pending between Raida, her then-husband Tareq Allan ("Tareq"), and Tareq's brother Qais. The background facts were aptly summarized by this court in *Allan I* and *Allan II*. We begin with this court's recitation of background facts in *Allan II*, with the portions most relevant to this proceeding emphasized:

> On February 18, 2015, [Tareq] filed a complaint for divorce against [Raida] in the Cuyahoga County Court of Common Pleas, Domestic Relations Division. *See Allan v. Allan*, 8th Dist. Cuyahoga No. 107142, 2019-Ohio-2111. On that same day, the trial court issued a mutual restraining order against both [Tareq] and [Raida]. [Tareq] filed an ex parte restraining order against [Raida] in regard to the contents within [Tareq's] personal safety deposit box.

On June 19, 2015, [Raida] filed an answer, counterclaim for divorce, and cross-claims against [Qais]. In the divorce action, [Raida] joined [Qais], [Tareq's] brother, and two Sunoco gas stations that [Tareq] and [Qais] jointly owned and operated. [Raida] asserted that the two gas stations were marital property. The gas stations were located at 871 Rocky River Drive, Berea, Ohio and 7606 Pearl Road, Middleburg Heights, Ohio. [Raida] also joined Tallan, L.L.C., [Tareq's] corporation, and various financial institutions in the cross-claims. The cross-claims consisted of several tort claims for fraud, misrepresentation, conversion, and misappropriation.

[Pearl Road, Inc.] was purchased by [Raida] with two other partners in November 1996. The parties purchased the gas station but did not purchase the land on which the gas station sat. *Allan* at ¶ 12. In June 1997, [Raida] became the sole owner of the Pearl Road gas station. [Tareq] and [Raida] were married on October 17, 2002. In 2001, [Tareq] entered into a purchase agreement with [Raida] to purchase 51 percent of the stock in 7606 Pearl Road. In the divorce action, [Raida] claims that in May 2002, prior to the couple's marriage, [Tareq] coerced her into transferring the remaining 49 percent in the Pearl Road gas station to him and not compensating her for the transfer.

Sometime in 2004, [Tareq] purchased 871 Rocky River Drive. This purchase included the property, equipment, and the building. *Id.* at ¶ 16. On May 21, 2004, [Tareq] organized Tallan, L.L.C. He is the sole member of Tallan, L.L.C. On June 17, 2004, [Tareq] incorporated [871 Rocky River Drive, Inc.], and in October 2004, Sunoco, Inc. conveyed the real property to Tallan, L.L.C. The purchase price was $385,000. *On October 25, 2004, Tallan, L.L.C., entered into a term note with Charter One Bank for $269,500 and an open-end mortgage was recorded for the same amount.* The difference of $120,000 was contributed by [Tareq] and [Raida], through a mortgage on the parties' marital home.

According to [Tareq], he operated the gas stations with [Qais]. Sometime in 2009, [Tareq] renovated 871 Rocky River Drive. However, he and [Qais] testified that [Tareq] ran out of money and was unable to complete the renovations. [Tareq] subsequently sold a portion of [871 Rocky River Drive, Inc.] to [Qais], and Tallan, L.L.C. retained ownership of the real estate. *Id.* at ¶ 26.

The sale of [871 Rocky River Drive, Inc.] was completed through two transactions. Sometime between October 2010 and March 2011, [Tareq] sold [Qais] 49 percent of the stock in [871 Rocky River Drive,

Inc.]. Both [Qais] and [Tareq] testified that [Qais] paid [Tareq] $10,000 and assumed the $330,580 debt to the construction company for the renovation work. On September 14, 2012, [Tareq] sold the remaining 51 percent of the stock to [Qais] for $57,000.

On November 22, 2013, [Tareq] also sold [Pearl Road, Inc.] to [Qais] for $150,000, which [Tareq] had originally purchased for $250,000.

*In May 2014, Charter One Bank wrote a letter to Tallan, L.L.C., stating that the commercial loan for the original purchase of [871 Rocky River Drive, Inc.] could not be extended past the maturity date of October 25, 2014, and $181,088 was owed on the note. [Tareq] testified that he asked [Qais] for assistance with payment on the note. [Tareq] and [Qais] apparently entered into an agreement in which [Qais] was to pay the remaining balance of $181,088, and in an effort to repay [Qais], [Tareq] would grant a mortgage in that amount on the marital home.*

On February 4, 2015, [Tareq] granted [Qais] a mortgage on the marital home for $181,088. On that same day, [Tareq], through Tallan, L.L.C., also granted [Qais] a second mortgage on 871 Rocky River Drive in the amount of $181,088. [Raida] did not sign the mortgage and testified that she did not have knowledge of it. [Tareq] filed for divorce from [Raida] on February 18, 2015.

*Once joined in the divorce action, [Qais] filed a complaint in Cuyahoga C.P. No. CV-15-847754 against [Tareq] for failure to pay $188,088 to [Qais]. [Raida] intervened in that matter and filed a stay, pending the outcome of the divorce proceedings between [Tareq] and [Raida]. The trial court dismissed [Qais]'s complaint without prejudice in May 2018.*

On October 23, 2015, [Qais] filed a motion to dismiss [Raida]'s amended counterclaim and cross-claims. The trial court denied the motion to dismiss on November 19, 2015.

Thereafter, on November 24, 2015, [Qais] filed a writ of prohibition to this court and an application for an alternative writ. *Allan v. Palos*, 8th Dist. Cuyahoga No. 103815, 2016-Ohio-3073. [Qais] argued that the trial court lacked subject matter jurisdiction over [Raida]'s cross-claims against [Qais]. On December 10, 2015, this court denied [Qais]'s application for an alternative writ and dismissed [Qais]'s complaint for a writ of prohibition. This court ruled that the trial court possessed general subject matter jurisdiction, and therefore, "prohibition is not

available to prevent or correct any erroneous judgment, nor is prohibition available as a remedy for an abuse of discretion or as a remedy in order to prevent an anticipated erroneous judgment." *Id.* at ¶ 12. In addition, it was noted that [Qais] possessed "an adequate remedy at law by way of an appeal." *Id.*, citing *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 638 N.E.2d 541 (1994), and *State ex rel. Pearson v. Moore*, 48 Ohio St.3d 37, 548 N.E.2d 945 (1990).

On remand, in June 2016, [Qais] filed an answer, counterclaims, and cross-claims against [Raida]. On July 28, 2016, [Qais] filed a timely motion to dismiss [Raida]'s claims, followed by a motion for summary judgment in May 2017. On June 20, 2017, the trial court issued a judgment entry granting [Qais]'s motion to dismiss and motion for summary judgment, thereby disposing of all of [Raida]'s cross-claims against [Qais] and all other joined parties.

Subsequently, the divorce action between [Tareq] and [Raida] proceeded to trial. On April 20, 2018, the trial court issued a judgment entry for divorce. Of significance to [Qais]'s instant appeal, the trial court determined Pearl Road and 871 Rocky River corporations to be marital property. The court further ordered [Qais] to release the mortgages on both the properties, and ordered [Tareq] to pay $181,088 to [Raida] in the event [Qais]'s mortgages were not released. The trial court also ordered [Qais] to remain in the action pursuant to Civ.R. 75(B)(1) until all of the orders were complied with.

(Emphasis added.) *Allan II*, 2019-Ohio-3179, at ¶ 2-15 (8th Dist.). In the emphasized passages above, the "agreement" between Tareq and Qais with respect to payment of the Charter One loan is a reference to a promissory note executed by Tareq and Tallan, LLC, in favor of Qais. In the present action, Qais sought to enforce the promissory note against both Tallan, LLC and Raida. *Allan I* provided more detail regarding the referenced Charter One loan, Qais's purported bailout of Tareq, and the associated promissory note:

[Tareq] testified that he borrowed $188,088 from [Qais] in November 2014 to pay the Charter One loan. [Qais] corroborated [Tareq's] testimony, stating that he paid the remaining balance of the Charter One loan, and [Tareq] signed a promissory note to pay the money back

to him. [Tareq] agreed that he secured the promissory note to [Qais] with two "mortgages on real estate" — the land on which the Rocky River Drive gas station sat (owned by Tallan, L.L.C., which was owned by [Tareq]) and the marital home. [Tareq] executed the two mortgages on February 4, 2015, just before he filed his complaint for divorce on February 18, 2015. According to the promissory note, [Tareq] was supposed to pay his brother [Qais] $4,500 per month beginning on December 1, 2014. [Tareq] agreed that he never made any payments to [Qais].

. . .The trial court found that Tallan, L.L.C. owned the real property at the Rocky River Drive gas station. . . . The court further found that the $188,080 promissory note signed by [Tareq] "immediately before the filing" of the divorce in favor of [Qais] and secured by a mortgage in part on the Rocky River Drive real estate was "part of the financial misconduct" by husband and was "questionable" debt that "should not be included in any division of property."

*Allan I*, 2019-Ohio-2111, at ¶ 48, 53 (8th Dist.). This reference to a "questionable"

debt prompts our return to *Allan II*, in which this court stated:

[T]he trial court's order releasing the mortgages is not an order vacating the actual transaction between [Qais] and [Tareq]. Such an order by the trial court would be an improper exercise of its jurisdiction over a third-party defendant pursuant to R.C. 3105.011. *See, e.g., Centerburg RE, L.L.C. v. Centerburg Pointe, Inc.*, 2014-Ohio-4846, 22 N.E.3d 296, ¶ 53 (5th Dist.) (where a separate breach of contract action between a husband and wife's business entities involved the rights of third parties to a divorce action, and thus, was within the scope of the general division's jurisdiction).

*Allan II* at ¶ 25.

{¶ 5} The *Allan II* Court nevertheless affirmed the domestic relations court

order requiring Qais to release the referenced mortgages. It held that

the trial court had jurisdiction to find the $181,088 husband mortgaged to appellant was exclusively husband's debt. Specifically, the trial court stated that the funds used to pay the "debt were proceeds from the businesses, which were the guarantors of the debt, and means that any debt in this case created by [husband] is at best questionable and

should not be included in any division of property." April 20, 2018 Judgment Entry at 17.

*Id*. at ¶ 19. This court noted that the domestic relations court "further ordered that 'any debt owed by [Tareq] to [Qais], including the mortgage on 871 Rocky River Drive and the marital home, shall be paid by [Tareq] and that [Tareq] shall hold [Raida] harmless on any of said debts.'" *Id*. at ¶ 31. Finally, *Allan II* ultimately held that "by finding that the marital home and 871 Rocky River Drive were marital property, and not [Qais's] property, the proper disposition was to order [Qais] to release the mortgages [Qais] held on the properties *to satisfy [Raida]'s award of greater marital property*." (Emphasis added.) *Id*. at ¶ 35.

{¶ 6} Finally, we note that in *Allan I*, this court, interpreting the domestic relations court decree and upholding the division of property, noted that "the trial court did not award [Raida] the two gas stations; *it awarded her the real estate on which the Rocky River Drive gas station sits, which [Tareq] owned as the sole shareholder of Tallan, L.L.C.*" (Emphasis added.) *Allan I*, 2019-Ohio-2111, at ¶ 81 (8th Dist.). Earlier in its opinion, however, this court wrote that "[i]n dividing the marital property, the court awarded [Raida] the marital home, her pension, *and Tallan, L.L.C.*, and awarded [Tareq] his car, the boat, and the three firearms." (Emphasis added.) *Id*. at ¶ 60.

{¶ 7} The underlying divorce decree, admitted as "Exh. X" in these proceedings, is somewhat confusing in this regard. In a table summarizing marital assets and debts, the domestic relations court noted that 871 Rocky River Drive (the real estate) was "[t]itled to . . . Tallan, LLC." April 20, 2018 Judgment Entry at 17.

In the section dividing property, however, the domestic relations court ruled that Raida was "awarded as division of property Tallan LLC and or [sic] [Tareq's] interest in the real property located at 871 Rocky River Drive, Berea, Ohio 44017." *Id.* at ¶ 30. The domestic relations court ordered Tareq to execute a deed conveying the property, indicating that failure to do so in a timely fashion would cause the decree to "operate as a conveyance thereof." *Id.* There is no dispute that Raida subsequently conveyed the real estate to herself.

## B. The Present Case

{¶ 8} Qais filed his complaint in the present action on November 14, 2019. As reflected above, by that time, this court had considered two appeals addressing aspects of this action's subject matter, i.e., the direct appeal of the divorce action (*Allan I*) and the appeal of the domestic relations court's decision requiring Qais to release the mortgages on both the North Olmsted marital home and 871 Rocky River Drive (*Allan II*).

{¶ 9} The complaint named Tallan, LLC and Raida for collection on the $188,080 promissory note. It alleged, inter alia, that the domestic relations court had awarded Tareq's interest in Tallan, LLC to Raida, and also that Raida "continued the prior business of Tallan, LLC, a commercial landlord renting the real property at 871 North Rocky River Drive, pursuant to a lease agreement Tallan LLC had in effect with 871 Rocky River Drive, Inc." (Complaint ¶ 13.) Qais further alleged that Raida continued to accept benefits pursuant to the lease agreement and that her commercial activities constituted a "total absorption" or "mere continuation" of

Tallan, LLC's business, such that she should be found responsible for the liabilities of Tallan, LLC, including the promissory note, "under the principles of succession liability." (Complaint ¶ 17-18 and 20.) The complaint further alleged that Raida had fraudulently transferred 871 Rocky River Drive to herself for no consideration.

{¶ 10} On February 7, 2020, counsel entered an appearance as "attorneys for defendants Raida Allan and Tallan, LLC." The same day, and through the same counsel, Raida and Tallan, LLC filed a joint answer. Qais had alleged in his complaint that "Defendants [Raida and Tallan, LLC] reside and do business in Cuyahoga County, Ohio." (Complaint ¶ 2.) In their joint answer, Raida and Tallan, LLC jointly admitted that "they reside in and do business in Cuyahoga County, Ohio[.]" (Answer ¶ 22.) They further admitted that "Defendant Raida Allan agreed to a triple net, month-to-month tenancy with 871 Rocky River Drive, Inc. for the real property at 871 Rocky River Drive pending the outcome of the matter captioned *Raida Allan v. Tareq Allan, et al., In the Court of Common Pleas, Cuyahoga County, Case No. CV-18-907570*." (Emphasis in original.) (Answer ¶ 33.)[2]

{¶ 11} In accordance with Civ.R. 8(C), the answer contained affirmative defenses, including res judicata. The answer did not, however, contain the affirmative defenses of failure of consideration or fraud.

{¶ 12} Discovery ensued. The docket indicates no further trial court action for close to a year. The last 2020 appearance docket entry is dated April 29, 2020,

---

[2] The referenced case is the subject of *Allan III* and the pending appeal in 8th Dist. Cuyahoga No. 114193.

and is simply a defense notice that written discovery had been served upon Qais. We note, however, that the stall in proceedings coincides with the onset of the COVID-19 pandemic.

{¶ 13} On March 10, 2021, before any case-management conference had been scheduled, Qais filed a motion for summary judgment. After successfully moving for an extension of time, Raida and Tallan, LLC filed a joint opposition on April 15, 2021. After further briefing, including Qais's unsuccessful motion to strike certain materials submitted by Raida and Tallan, LLC, the trial court denied Qais's motion for summary judgment without opinion by order dated June 29, 2021.

{¶ 14} Shortly thereafter, on July 14, 2021, the court next held a case-management conference and established a full litigation schedule. The order included a deadline for seeking leave to file any further dispositive motions. On November 3, 2021, Qais requested leave to file his second dispositive motion. On November 9, 2021, Raida and Tallan, LLC jointly moved for leave to file a dispositive motion instanter. They attached a motion for summary judgment based upon res judicata, referencing the domestic relations court decision and related appeals, as well as nonparty Tareq's bankruptcy discharge, which included the purported debt to Qais.

{¶ 15} By journal entry dated December 16, 2021, the trial court granted the parties' respective motions for leave. Raida and Tallan, LLC promptly refiled their motion for summary judgment, still based on res judicata, on December 17, 2021. Qais filed his motion for summary judgment on December 28, 2021.

{¶ 16} Briefing on the summary-judgment motions was formally completed on February 10, 2022. Briefing resumed, however, on June 22, 2022, when Qais alerted the trial court to this court's May 5, 2022 decision in *Allan III*, arguing that it precluded Raida's res judicata defense. Raida and Tallan, LLC responded with an opposing brief on June 27, 2022, in which they sought to distinguish *Allan III*. On June 12, 2023, the trial court denied the cross-motions for summary judgment without opinion. The parties waived the right to trial by jury, and the trial court scheduled a bench trial.

{¶ 17} In advance of trial, the parties filed trial briefs, witness and exhibit lists, and proposed stipulations. As the parties began preparing for trial, briefing on the res judicata issue again resumed, this time in the form of a motion in limine filed by Qais and an opposition filed by Raida and Tallan, LLC.

{¶ 18} The case proceeded to a bench trial held on October 12, 13, and 16, 2023. Prior to opening statements, the trial court entertained extensive arguments regarding res judicata, but preliminarily denied the associated motion in limine, indicating it preferred to address such issues "as they come up during the trial." (Tr. 14, 63, and 107.) At the conclusion of all testimony, the trial court indicated that "the arguments of res judicata and what applies" were matters that "should . . . be argued in closing arguments." (Tr. 444.)

{¶ 19} The trial court addressed several other issues prior to opening statements, including the parties' proposed stipulations. After extensive discussion,

the parties were able to agree to 72 stipulations in order to streamline the bench trial.

{¶ 20} Following opening statements, the trial court took testimony and received exhibits. Because the trial court's judgment on the merits has not been appealed, and because much of the testimony dovetails with the domestic relations case and associated appeals, we summarize the testimony only briefly.

{¶ 21} Qais testified regarding his purported loan to Tareq and Tallan, LLC and the associated promissory note. He testified that in 2003 or 2005, through Tallan, LLC as principal debtor, Tareq had borrowed money from Charter One to purchase the 871 Rocky River Drive business. In November 2014, Tareq lacked sufficient funds to pay off the loan and asked Qais to lend him the money to pay the Charter One obligation, executing a promissory note in return for Qais's assistance. (Exhibit No. 5.) Qais testified that he paid Charter One, with the funds of $181,087.31 coming from his personal account. He further testified that the amount of the promissory note from Tareq and Tallan, LLC to Qais in the amount of $188,088 included an "extra" $7,000 "because I pay for the debt." (Tr. 89.) The promissory note also included interest. Qais further identified a commercial lease between 871 Rocky River Drive, Inc. and Tallan, LLC. (Exhibit No. 9.) He testified that at some point he began making lease payments directly to Raida, because "[s]he say she owned the Tallan, LLC[.]" (Tr. 94.) Qais also testified that to his understanding, Tareq's debts had been discharged in bankruptcy proceedings. (Tr. 97.)

{¶ 22} On cross-examination, Qais admitted that the companies he controlled (871 Rocky River Drive, Inc. and Pearl Road, Inc.), along with Tareq, were guarantors of the Charter One loan. He admitted that he had received default letters from Charter One that were also sent to Tallan, LLC and Tareq. He identified the source of the funds to pay Charter One as coming from a combination of cash in his safety deposit box and "some from my gas stations." (Tr. 139.) He later admitted that the $70,000 in the safety deposit box also came from the gas stations. (Tr. 181-182 and 185.) This line of questioning was designed to support Raida and Tallan, LLC's lack-of-consideration argument, i.e., that the money used to pay Charter One was money from the corporations, not Qais's personal funds, and that the corporations were guarantors of the Charter One loan. Qais further admitted that he had previously sued Tareq for collection on the note in 2015 (a case in which Raida had intervened), and that the lawsuit was ultimately dismissed. On redirect, Qais testified that Raida never refused the rent money sent to her pursuant to the lease. (Tr. 283-284.)

{¶ 23} Qais next called Raida as if on cross-examination. Raida denied instructing Qais to pay rent to her under the aforementioned lease, which she claimed was not valid. She explained that she never dissolved Tallan, LLC because she does not own the company. She claimed that she never established control over Tallan, LLC because it was simpler to transfer the real property (Tallan, LLC's asset) to herself.

{¶ 24} On direct examination, Raida testified that she was familiar with the Charter One loan, which she characterized as a ten-year balloon loan. She claimed she only became aware of the promissory note between Qais and Tareq (and Tallan, LLC) during divorce proceedings. After the domestic relations court entered its decree of divorce, Tareq refused to transfer his interest in Tallan, LLC to her, consistently refusing to transfer the operating agreement or execute any papers to effect the transfer of Tallan, LLC. She confirmed that Tareq attempted to block the real property transfer by appealing the domestic relations court decision. Raida testified that at the time of trial, she was currently receiving rent from 871 Rocky River Drive pursuant to court order and that she had never been ordered to pay Tallan, LLC for the right to collect rent. She denied she accepted rent pursuant to the commercial lease identified as Qais's exhibit No. 9 or that she told anyone she was accepting rent pursuant to the lease. She further denied any obligation to dissolve Tallan, LLC or file its tax returns.

{¶ 25} At the beginning of the Friday, October 13, 2023 afternoon session, before all testimony was completed, the trial court raised the issue of affirmative defenses not pleaded in Raida's and Tallan, LLC's initial answer, including lack of consideration and fraud. The trial court informed Raida's and Tallan, LLC's counsel of its "belief that you may try to make an argument for consideration, lack of consideration or fraud, none of which have been pled in your — none of which are contained in your answer." (Tr. 247.) The same day, after all testimony had finished but prior to closing arguments, the trial court indicated it would allow all counsel to

brief the issue over the weekend and present further arguments Monday morning, October 16, 2023. (Tr. 403-409.)

{¶ 26} Following testimony, the trial court heard arguments regarding the parties' exhibits. Multiple exhibits were admitted, some over objections. Additional exhibits labeled "Court's Exhibits" were admitted without objection. These included the parties' combined stipulations.

{¶ 27} On October 15, 2023, Qais filed a brief arguing that Raida and Tallan, LLC had waived the omitted affirmative defenses, and Raida and Tallan, LLC filed a motion for leave to amend the answer to include the omitted affirmative defenses. Following arguments on October 16, 2023, the court granted Raida's and Tallan, LLC's motion for leave on the record, permitting them to amend the answer. The trial court found that the affirmative defenses were addressed in some form "at least twice" in previous pleadings "going back two years," that Qais was thereby "put on notice" of the intention to raise the defenses, and thus that allowing amendment during trial would not constitute "undue surprise." (Tr. 434-443.)[3]

{¶ 28} The trial court then heard closing arguments. Qais recounted the testimony, countering the lack-of-consideration argument by claiming that the source of the funds — even if it was Qais's businesses — was irrelevant to the validity of the promissory note. In somewhat of a pivot, he argued that Raida could not

---

[3] The trial court's decision to permit amendment of the answer to raise additional affirmative defenses was the subject of Qais's cross-appeal. As discussed below, on April 17, 2025, this court, sua sponte, dismissed the cross-appeal as untimely pursuant to App.R. 4(A)(1).

speak for Tallan, LLC based upon her own testimony that she was not an owner or manager of the LLC. Qais argued she was nevertheless liable for the promissory note debt under common law principles such as merger and mere continuation because she took Tallan, LLC's real property "out from that LLC[,] and there's no reason to do that except to avoid the liability of the LLC." (Tr. 454.)

{¶ 29} Raida argued again in closing that res judicata barred Qais's claim on the promissory note, claiming the issued had been definitively decided in the domestic relations court, including findings that "all of the money" allegedly provided by Qais "came from the Sunoco gas stations, who at the time of the default were legally obligated to pay the debt" to Charter One. (Tr. 457.) Raida argued that Qais's testimony at the bench trial likewise confirmed that all of the money came from the businesses, who were not parties to the promissory note and were guarantors of the Charter One loan, and that there was therefore no consideration for the note. Returning again to res judicata, Raida argued that the domestic relations court held that Tareq, rather than Tallan, LLC, was exclusively responsible for any debt on the promissory note. She noted that Qais did not appeal this aspect of the domestic relations court's judgment. Raida characterized Qais's actions as a "scheme . . . to defraud" her. (Tr. 462.)

{¶ 30} In his rebuttal, Qais argued that res judicata did not apply and that there was consideration for the note. He further argued that liability under the promissory note should extend to both Tallan, LLC and Raida because Raida "stripped [the] LLC of the asset of the land." (Tr. 476.)

{¶ 31} Trial concluded with the court taking the matter under advisement. There is no indication in the transcript or elsewhere in the record that the parties requested an opportunity to submit proposed findings of fact and conclusions of law pursuant to Civ.R. 52.

{¶ 32} The trial court issued an opinion on August 27, 2024, entering judgment in favor of Raida and Tallan, LLC and against Qais on all causes of action in the complaint. The trial court found that Qais lacked credibility and that the funds used to pay the Charter One loan came from his businesses, which were guarantors of the Charter One loan, rather than Qais's personal account. It therefore found the note was "fraudulent, and lacks consideration."

{¶ 33} The trial court further found that the domestic relations court gave Raida "the option of either trying to obtain Tallan LLC and/or the interest of the real property within Tallan LLC." It found that Raida was unable to become the owner of Tallan LLC because of Tareq's refusal to cooperate and that she thereafter conveyed 871 Rocky River Drive to herself pursuant to the domestic relations court order. It explicitly found that while Raida "has an equitable interest that possibly could be pursued in Tallan LLC, she is not the owner." The trial court further found that Raida had not "expressly or impliedly assumed the liabilities of Tallan, LLC," but instead had "continued a similar landlord business as Tallan LLC did" by leasing the relevant property. The trial court found the property had been transferred pursuant to the domestic relations court order and "was in no way a fraudulent attempt to escape liability" and did not evidence "a de-facto merger, consolidation,

or absorption of Tallan LLC's business." For the same reasons, the trial court found that "Tallan LLC and Raida A. Allan did not engage in a fraudulent transfer" of the subject property. The trial court, in making these factual and legal determinations, did not directly address the parties' res judicata arguments.

{¶ 34} On September 24, 2024, Raida, this time on behalf of herself only, filed a motion for sanctions against Qais and his two attorneys pursuant to R.C. 2323.51 and Civ.R. 11. While not specifically relying on res judicata arguments, Raida recounted the extensive procedural history in the various cases and argued that Qais's claims lacked any merit, repeatedly referring to findings made by the domestic relations court. The motion also accused Qais's attorneys of making false or misleading statements to the court and mischaracterizing evidence.

{¶ 35} Furthermore, with respect to Qais's first and second causes of action, Raida leaned heavily into the lack-of-consideration argument, arguing in part (and without citation to authority) that because the corporations controlled by Qais were guarantors of the Charter One loan, they merely "tendered payment because they were legally obligated to do so," and the promissory note was therefore not supported by consideration.[4] With respect to Qais's second and third causes of action, Raida claimed "the doctrine of successor liability is not applicable." Again,

---

[4] Raida argued that at trial, Qais "conceded many facts he and his attorneys refused to acknowledge for years," including admitting that Qais's business entities were "guarantors of the Charter One Bank Term Loan" and "were obligated to pay the balance upon Tallan's default." Again, however, Raida cites no cases in support of her argument that payment by a guarantor on a separate note rendered the promissory note invalid for lack of consideration.

she cited no cases. Finally, in a nod to alleged motive, Raida recounted the parties' settlement discussions and accused Qais and his attorneys of perpetuating the allegedly baseless claims "in the hopes [Raida] may sell 871 N. Rocky River Drive, Berea, Ohio for less than fair market value."

{¶ 36} Qais filed his brief in opposition on October 14, 2024. The brief itself consists of 17 pages. In addition to the brief, Qais attached 623 pages of exhibits for the trial court's consideration. His arguments are best encapsulated by the opening sentence of the concluding paragraph: "The Court would have thrown this case out on summary judgment if it was totally unsupported and objectively unreasonable."

{¶ 37} More specifically, Qais argued that Raida's improper-motive argument (i.e., to force a sale of the property at less than market value) was disingenuous because Qais had purportedly made an offer well in excess of market value. Qais argued that the affirmative defenses of fraud and lack of consideration could not be reasonably anticipated because the amendments were not permitted until the time of trial — indeed, after testimony had concluded.[5] Qais further argued that Raida had acted as the owner of Tallan, LLC, even signing a sworn verification of certain interrogatory responses on behalf of herself and Tallan, LLC on April 7, 2020, indicating she was the "Sole Member of Tallan LLC." (Qais's opposition,

---

[5] Qais also contended that Raida's and Tallan, LLC's formal motion to amend the answer had been implicitly denied, citing S*iemientkowski v. State Farm Ins. Co.*, 2005-Ohio-4295, ¶ 39 (8th Dist.) ("In general, if the trial court fails to mention or rule on a pending motion, the appellate court presumes that the motion was implicitly overruled.") This argument did little to advance his cause; the trial court ruled on the record that it was "going to grant [Raida's and Tallan, LLC's] leave to amend their answer instanter[.]" (Tr. 438.) Qais has not advanced this argument on appeal.

exhibit No. 2.) His focus then turned to Raida's and Tallan, LLC's successful lack-of-consideration argument in more detail, essentially rearguing the merits of the case but noting the conspicuous lack of citations to authority for the argument that the promissory note was not supported by consideration because of the corporations' guarantor status or the source of the funds. Qais discounted the trial court's finding of fraud, arguing it was tied more to nonparty Tareq's misconduct in connection with divorce proceedings than to the validity of the subject promissory note.

{¶ 38} Qais also noted the ambiguity of the trial court's remark that Raida had at most "an equitable interest that possibly could be pursued in Tallan, LLC." He bluntly stated that "[t]o be honest, Plaintiff does not know what that means." *Id.* at p. 9.

{¶ 39} He further argued that Raida's ownership of Tallan, LLC was a properly disputed issue, citing language in *Allan III* to support the contention that Raida actually owned Tallan, LLC, and not just the real property constituting its sole asset. *See, e.g., Allan III*, 2022-Ohio-1488, at ¶ 54 (8th Dist.) ("Raida argues . . . that when she was granted the membership interest in Tallan, LLC and thus title to the real property . . . ."). Qais also cited *Allan II* for the same proposition. *Allan II*, 2019-Ohio-3179, at ¶ 60 (8th Dist.) ("In dividing the marital property, the [domestic relations] court awarded wife the marital home, her pension, and Tallan, L.L.C., and awarded husband his car, the boat, and the three firearms."). Qais further noted that Raida's motion for sanctions was "the one and only time in this case that she

filed something of behalf of herself and not [also] on behalf of Tallan, LLC." (Qais's opposition at p. 9.) He argued that while Raida essentially sought all expenses associated with the defense of the case, codefendant Tallan, LLC had not filed a similar motion, even though it must have borne "some of the costs of the defense," and "presumably half." *Id*. at p. 11. Qais argued that given the trial court's ruling that Raida did not own or operate Tallan, LLC, she "could not have authorized it to retain counsel or to conduct a defense in this matter," and therefore "cannot have incurred the costs of defense on behalf of Tallan, LLC because she has not assumed any liabilities of Tallan, LLC." *Id*. at p. 11.

{¶ 40} Raida filed a short reply brief on October 21, 2024. In addressing the lack-of-consideration and fraud defenses, Raida again relied heavily into the conclusions of the domestic relations court that Tareq and Qais had committed financial misconduct in connection with the promissory note and that the note was not supported by consideration. While not using the term, this is fairly characterized as another attempt to resurrect the res judicata argument. Raida also chided Qais for failing to rebut the lack-of-consideration argument with legal authority. (It is noteworthy, however, that the only authority Raida cited concerned the obligations of a guarantor upon default rather than the disputed issue of consideration for a separate promissory note.) She further argued that whether she owned Tallan, LLC was irrelevant to the decision on sanctions. Again, however, her argument relied heavily on the domestic relations court's decree of divorce.

{¶ 41} While the motion for sanctions was pending, Raida filed a motion for a nunc pro tunc journal entry to correct the phrase "assets of Tallan, LLC" to read "asset of Tallan, LLC," based on the trial court's finding that the only asset (singular) of Tallan, LLC was the real property located at 871 Rocky River Drive, Berea, Ohio. Qais opposed the motion, arguing that she sought the change "to assist her in another recently filed case (CV-24-101175)." Raida filed a reply brief.

{¶ 42} On November 18, 2024, the trial court docketed an order that both granted Raida's motion for a nunc pro tunc journal entry and contained the nunc pro tunc entry itself. The same day, the court journalized a separate entry denying, without a formal hearing or opinion, Raida's motion for sanctions.

{¶ 43} On December 2, 2024, Raida timely filed a notice of appeal contesting the denial of her motion for sanctions. On December 17, 2024, Qais filed a cross-appeal indicating he was appealing "from the final judgment entry of the Court of Common Pleas of Cuyahoga County Ohio originally entered on August 27, 2024 and subsequently amended on November 18, 2024." Sua sponte, after briefing on the merits of the appeal and cross-appeal were completed, this court ordered the parties to brief the timeliness of the cross-appeal and subsequently dismissed the cross-appeal as untimely pursuant to App.R. 4(A)(1). Accordingly, despite the extensive discussion of the cross-appeal in the parties' briefs, we have no jurisdiction to consider it.

## II. Assignment of Error

{¶ 44} Raida presents a single assignment of error for our review:

The trial court erred and abused its discretion in denying appellant/cross-appellee Raida Allan's motion for sanctions without a hearing because the record clearly evidences frivolous conduct and an arguable basis for an award of sanctions.

We find no merit to Raida's assignment of error. Accordingly, we overrule the sole assignment of error and affirm the trial court's judgment denying Raida's motion for sanctions.

## III. Analysis

{¶ 45} A decision to grant or deny sanctions under R.C. 2323.51 and Civ.R. 11 rests within the sound discretion of the trial court. *MRN Ltd. Partnership v. Gamage*, 2023-Ohio-4541, ¶ 20 (8th Dist.), citing *Walters v. Carter*, 2020-Ohio-807, ¶ 17 (8th Dist.). A trial court "abuses its discretion when it exercises its judgment in an unwarranted way with respect to a matter over which it has discretionary authority." *Hunter v. Troutman*, 2025-Ohio-366, ¶ 64 (8th Dist.), citing *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. "The term abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Hunter* at ¶ 64, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983).

{¶ 46} Ohio law provides two different mechanisms for an aggrieved party to seek attorney fees for frivolous conduct: R.C. 2323.51 and Civ.R. 11. *Walters* at ¶ 13, citing *In re Estate of O'Toole*, 2019-Ohio-4165, ¶ 22 (8th Dist.). Under R.C. 2323.51, a trial court may award attorney fees to a party aggrieved by frivolous conduct in a civil action. *Walters* at ¶ 13, citing *Grimes v. Oviatt*, 2019-Ohio-1365, ¶ 18 (8th Dist.). R.C. 2323.51 defines frivolous conduct as conduct that satisfies the following:

(i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.

(ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

(iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

(iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

R.C. 2323.51(A)(2)(a)(i)-(iv).

{¶ 47} According to the Ohio Supreme Court, frivolous conduct under R.C. 2323.51(A)(2)(a) "'must involve egregious conduct.'" *Taylor v. BASF Catalysts, LLC*, 2023-Ohio-1136, ¶ 62 (8th Dist.), quoting *State ex rel. DiFranco v. S. Euclid*, 2015-Ohio-4915, ¶ 15. "'Frivolous conduct is not proved merely by winning a legal battle or by proving that a party's factual assertions were incorrect.'" *Id.*, quoting *DiFranco* at *id.*, citing *Ohio Power Co. v. Ogle*, 2013-Ohio-1745, ¶ 29-30 (4th Dist.).

{¶ 48} To determine whether a claim is frivolous under R.C. 2323.51, courts apply an objective standard without reference to what the individual knew or believed. *Bikkani v. Lee*, 2008-Ohio-3130, ¶ 22 (8th Dist.); *Ceol v. Zion Industries, Inc.*, 81 Ohio App.3d 286, 289 (9th Dist. 1992). "The test is whether no reasonable attorney would have filed the action based upon the existing law." *Walters*, 2020-

Ohio-807, at ¶ 14 (8th Dist.), citing *ABN Amro Mtge. Group, Inc. v. Evans*, 2013-Ohio-1557, ¶ 18 (8th Dist.).

{¶ 49} A determination to impose sanctions under R.C. 2323.51 involves a mixed question of law and fact. *Thomas v. Murry*, 2021-Ohio-206, ¶ 39 (8th Dist.), citing *Resources for Healthy Living, Inc. v. Haslinger*, 2011-Ohio-1978, ¶ 26 (6th Dist.). We review "purely legal questions de novo." *Woodrow v. Krukowski*, 2023-Ohio-378, ¶ 15 (8th Dist.), citing *Riston v. Butler*, 2002-Ohio-2308, ¶ 22 (1st Dist.). "On factual issues, however, 'we give deference to the trial court's factual determinations because the trial judge, of course, will have had the benefit of observing the entire course of proceedings and will be most familiar with the parties and attorneys involved.'" *Thomas* at ¶ 39, quoting *In re Estate of O'Toole*, 2019-Ohio-4165, at ¶ 39 (8th Dist.). "The ultimate decision as to whether to grant sanctions under R.C. 2323.51 rests within the sound discretion of the trial court." *Woodrow* at ¶ 15, citing *State ex rel. Striker v. Cline*, 2011-Ohio-5350, ¶ 11.

{¶ 50} Civ.R. 11 governs the signing of pleadings and states, in relevant part:

> The signature of an attorney or *pro se* party constitutes a certificate by the attorney or party that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. . . . For a willful violation of this rule, an attorney or *pro se* party, upon motion of a party or upon the court's own motion, may be subjected to appropriate action, including an award to the opposing party of expenses and reasonable attorney fees incurred in bringing any motion under this rule.

(Emphasis in original.)

{¶ 51} In determining whether a violation of Civ.R. 11 is willful, trial courts apply a subjective bad-faith standard. *Gamage*, 2023-Ohio-4541, at ¶ 21 (8th Dist.), citing *Grimes v. Oviatt*, 2017-Ohio-1174, ¶ 24 (8th Dist.), citing *Riston* at ¶ 12.

{¶ 52} "The trial court is not required to conduct a hearing before ruling on a motion for sanctions so long as the court has sufficient knowledge of the underlying facts and circumstances." *Walters*, 2020-Ohio-807, at ¶ 17 (8th Dist.), citing *Internatl. Union of Operating Engineers, Local 18 v. Laborers' Internatl. Union of N. Am., Local 310*, 2017-Ohio-1055, ¶ 18 (8th Dist.). This court has stated, however, that

> [a]lthough ordinarily a trial court does not have to hold a hearing if it denies a motion for attorney fees and costs under R.C. 2323.51 or Civ.R. 11, Ohio courts have recognized that a trial court abuses its discretion when it "arbitrarily" denies a request for attorney fees. *Bikkani*, 8th Dist. Cuyahoga No. 89312, 2008-Ohio-3130, at ¶ 31, citing *Turowski*, 68 Ohio App.3d 704, 589 N.E.2d 462; *Mitchell v. W. Res. Area Agency on Aging*, 8th Dist. Cuyahoga Nos. 83837 and 83877, 2004-Ohio-4353, ¶ 27. An arbitrary denial occurs when the record clearly evidences frivolous conduct, but the trial court nonetheless denies a motion for attorney fees without holding a hearing. *Bikkani* at *id*. Similarly, if an arguable basis exists for an award of sanctions under Civ.R. 11, a trial court is required to hold a hearing on the motion. *Fitworks Holdings, L.L.C. v. Pitchford-El*, 8th Dist. Cuyahoga No. 88634, 2007-Ohio-2517, ¶ 14, citing *Capps v. Milhem*, 10th Dist. Franklin No. 03AP-251, 2003-Ohio-5212.

*Woodrow*, 2023-Ohio-378, at ¶ 17 (8th Dist.).

{¶ 53} Raida's sanctions arguments under R.C. 2323.51(A)(2) do not explicitly acknowledge the distinctions between subsection (i)-(iv). Raida's argument that Qais's lawsuit was filed with malicious intent, however — i.e., that it was intended to force her to sell him real estate at a price below market value —

would appear to implicate R.C. 2323.51(A)(2)(a)(i). "Analysis of a claim that a complaint was filed with malicious intent, and therefore, is frivolous under R.C. 2323.51(A)(2)(a)(i), requires a factual determination." *Walters* at ¶ 22, citing *Lable & Co. v. Flowers*, 104 Ohio App.3d 227, 233 (9th Dist. 1995). Accordingly, "[b]ecause the trial judge has the benefit of viewing the entire course of the proceedings and is the most familiar with the parties and their attorneys, a finding about whether conduct was performed to harass or injure another party is subject to substantial deference by a reviewing court." *Id.*, citing *Grimes*, 2019-Ohio-1365, at ¶ 27 (8th Dist.); *Lable & Co.* at 233.

{¶ 54} That leaves the remaining subsections, i.e., whether Qais's lawsuit was frivolous under R.C. 2323.51(A)(2)(a)(ii) (the claim is not warranted under existing law), R.C. 2323.51(A)(2)(a)(iii) (the claim has no evidentiary support), and R.C. 2323.51(A)(2)(a)(iv) (the claim is not warranted by the evidence). "Frivolous conduct implicated by R.C. 2323.51(A)(2)(a)(ii) involves proceeding on a legal theory that is wholly unwarranted in law," raising the objective question of "'whether no reasonable lawyer would have brought the action in light of the existing law.'" *Woodrow* at ¶ 16, quoting *Internatl. Union of Operating Engineers* at ¶ 15, citing *Orbit Electronics, Inc. v. Helm Instrument Co.*, 2006-Ohio-2317, ¶ 49 (8th Dist.). "A claim is therefore frivolous if it is absolutely clear under the existing law that no reasonable lawyer could argue the claim." (Cleaned up.) *Woodrow* at ¶ 16; *see also Jiang v. Zipkin*, 2022-Ohio-3816, ¶ 20 (8th Dist.); *Musial Offices, Ltd. v. Cuyahoga Cty.*, 2021-Ohio-2325, ¶ 19 (8th Dist.). Furthermore, "R.C. 2323.51(A)(2)(a)(ii)

represents a question of law that this court must review de novo." *Walters* at ¶ 24, citing *Grimes* at ¶ 30.

{¶ 55} R.C. 2323.51(A)(2)(a)(iii) and (iv), however, present factual questions. "'A factual contention needs only minimal evidentiary support to avoid a finding of frivolous conduct, and we afford the trial court a degree of deference and will not reverse it unless the record lacks competent, credible evidence to support the trial court's finding.'" *Walters*, 2020-Ohio-807, at ¶ 24 (8th Dist.), quoting *Grimes* at ¶ 31, citing *Southard Supply, Inc. v. Anthem Contrs., Inc.*, 2017-Ohio-7298, ¶ 14-15 (10th Dist.). Moreover, "'[a] party's conduct is not frivolous simply because a claim is not well-grounded in fact or impervious to dispute.'" *Walters* at ¶ 35, quoting *Conneaut v. Buck*, 2015-Ohio-2593, ¶ 35 (11th Dist.).

{¶ 56} As this court discussed in *Walters*:

> Courts must carefully apply R.C. 2323.51 so that legitimate claims are not chilled. *Miller v. Miller*, 5th Dist. Holmes No. 11CA020, 2012-Ohio-2905, ¶ 14. "[A] claim is frivolous if it is absolutely clear under the existing law that no reasonable lawyer could argue the claim." *Hickman v. Murray*, 2d Dist. Montgomery No. CA 15030, 1996 Ohio App. LEXIS 1028, 14 (Mar. 22, 1996). "A party is not frivolous merely because a claim is not well-grounded. * * * Furthermore, the statute was not intended to punish mere misjudgment or tactical error. * * * Instead the statute was designed to chill egregious, overzealous, unjustifiable, and frivolous action. * * *." *Riston v. Butler*, 149 Ohio App. 3d 390, 2002-Ohio-2308, 777 N.E.2d 857, ¶ 35 (1st Dist.).

*Walters* at ¶ 25. In *Walters*, as here, the trial court denied a motion for sanctions with no hearing and without explanation. *Id.* at ¶ 11. This court nevertheless examined the record, stating that it would apply "a de novo standard of review to the

trial court's legal determination (R.C. 2323.51(A)(2)(a)(ii)) and a deferential review to the court's factual determinations (R.C. 2323.51(A)(2)(a)(i)-(iv))[.]" *Id.* at ¶ 44.

{¶ 57} We have reviewed the entire record in this case, including the bench trial testimony and exhibits, as well as antecedent court decisions involving these and related parties. We find no abuse of discretion in the trial court's denial of Raida's motion for sanctions without a hearing.

{¶ 58} We engage in a de novo legal analysis of whether Qais's claims were so wholly unwarranted by existing law that filing them constituted a violation of R.C. 2323.51(A)(2)(a)(ii). Because issues surrounding lack of consideration and fraud turned on credibility and the weight the trial court assigned to testimony and other evidence, the only issue arguably requiring de novo review is the purported res judicata effect of the domestic relations court judgment.

{¶ 59} Whether res judicata applies in a particular scenario is a question of law reviewed under a de novo standard. *Kobal v. Kobal*, 2022-Ohio-812, ¶ 8 (8th Dist.), citing *Hempstead v. Cleveland Bd. of Edn.*, 2008-Ohio-5350, ¶ 6 (8th Dist.). At several junctures, including in her motion for summary judgment and at trial, Raida interposed res judicata arguments. Her motion for summary judgment was explicitly captioned to alert the court that her principal argument turned on res judicata. After Raida filed her dispositive motion, this court issued its opinion in *Allan III*, which considered and rejected a res judicata argument in a related matter based upon lack of privity between Tareq and Qais as to whether the businesses constituted marital property. *Allan III*, 2022-Ohio-1488, at ¶ 40 (8th Dist.). The

parties alerted the trial court to that decision. While Raida attempted to distinguish it, the court subsequently denied Raida's motion for summary judgment.

{¶ 60} Raida pressed her res judicata arguments again at trial. While the trial court ultimately ruled in her favor on Qais's three causes of action, it did not premise its ruling on res judicata. The term res judicata does not appear in Raida's motion for sanctions (except in exhibits, namely, counsel's Civ.R. 11 letter and the attorney invoices attached to the motion) or in her reply brief. No mention of res judicata or any variant (i.e., claim preclusion, issue preclusion, or collateral estoppel) appears in Raida's briefs on appeal. Raida has apparently abandoned any res judicata argument, except to imply at various turns that Qais should have known his claims were frivolous based upon findings made by the domestic relations court in its decree of divorce. On this record, we cannot conclude that with respect to the specific issues in this case, the previous decisions in the domestic relations court and related appeals so clearly and unequivocally support a res judicata claim that Qais's causes of action were not warranted under existing law or were otherwise improper under R.C. 2323.51(A)(2)(a)(ii).

{¶ 61} We are no longer tasked with addressing the propriety of the trial court's decision to grant Raida's and Tallan, LLC's motion for leave to amend their answer, during trial, to include new affirmative defenses, i.e., lack of consideration and fraud. The last-minute amendment nevertheless complicates Raida's sanctions argument. Raida and Tallan, LLC argued that Qais was aware these defenses were in play because of the proceedings in domestic relations court in 2015. (Tr. 441-

442.) The trial transcript indicates that Qais's counsel interjected, wondering aloud why these defenses should have been obvious to Qais years before he commenced this action but were evidently not so apparent to Raida and Tallan, LLC, who failed to include these mandatory affirmative defenses in their answer. Specifically, he asked opposing counsel: "Is it your position that the [Raida and Tallan, LLC] did not know about these defenses [during the divorce trial], but that [Qais] did?" (Tr. 442.)

{¶ 62} Raida has thus maneuvered herself into the awkward position of arguing that Qais should be sanctioned for not recognizing purportedly obvious affirmative defenses that did not find their way into Raida's answer until trial. Moreover, we cannot ignore two additional facts. First, from a factual standpoint, these defenses were intensely litigated throughout the bench trial. The trial court heard extensive testimony before ultimately ruling that Qais was not a credible witness and that the promissory note both lacked consideration and was fraudulent. The bench trial transcript reflects the trial court's efforts to fully understand all aspects of the case, even to the point of interjecting during witness testimony to obtain clarifications. The same trial court subsequently reviewed Raida's motion for sanctions, Qais's opposition, and Raida's reply brief, ultimately denying the motion. The trial court was plainly in the best position to determine the merits of Raida's motion for sanctions.

{¶ 63} Second, while we are not called upon to review the trial court's rulings on the merits of the case, we note that Raida's and Tallan, LLC's arguments regarding lack of consideration are not supported by citations to cases or other

authority. The trial court's decision on these issues likewise cites no cases. In this mixed legal and factual inquiry, it is Raida's obligation to support her lack-of-consideration arguments by pointing not only to the facts found by the trial court (that the cash actually came from Qais's businesses who were guarantors of the Charter One loan), but also authority demonstrating that those facts support the conclusion that the promissory note failed for lack of consideration.

{¶ 64} Raida has not offered any cases addressing the basic concept of consideration. *See, e.g., 1215 Superior, LLC v. Berger*, 2025-Ohio-645, ¶ 18 (8th Dist.). She does not explain why there was no bargained-for exchange where one person or business parted with cash (a detriment) to extinguish another person's debt (a benefit) in exchange for a promissory note requiring the maker to repay not only the cash, but interest and an additional sum, in this case, $7,000. With respect to guarantor status, there is no discussion of the fact that the duty of the guarantors ran to Charter One, not to Tareq, or any apparent recognition of the principle that payment to Charter One on the guaranty might have triggered subrogation rights. *See Greenzalis v. Nationwide Mut. Ins. Co.*, 2016-Ohio-8344, ¶ 35 (10th Dist.) ("[W]here a guarantor totally satisfies an underlying obligation, such as paying off a promissory note entirely, general principles of guaranty law establish a guarantor's right to step into the shoes of a payee to enforce the note against the principal debtor."); *see also* R.C. 1303.59(F) ("An accommodation party who pays the instrument is entitled to reimbursement from the accommodated party and is entitled to enforce the instrument against the accommodated party.").

{¶ 65} Raida likewise offers no case law to support the contention that Qais's acquiring the funds from his businesses to pay the Charter One loan is relevant to her consideration argument; the cash ultimately left Qais's control and was delivered to Charter One at Tareq's request for a bargained-for benefit (again, the retirement of the bank debt). Whether the "washing" of the funds constituted a species of fraudulent transfer to the detriment of other creditors would appear to be a separate issue from the analysis of consideration.

{¶ 66} We are not obligated to find cases to support Raida's arguments. *See Story v. Story*, 2021-Ohio-2439, ¶ 30 (8th Dist.) (appellate court not obligated to construct or develop arguments for appellant or to guess at undeveloped claims); *Strauss v. Strauss*, 2011-Ohio-3831, ¶ 72 (8th Dist.) ("'If an argument exists that can support this assigned error, it is not this court's duty to root it out.'"), quoting *Cardone v. Cardone*, 1998 Ohio App. LEXIS 2028, *22 (9th Dist. May 6, 1998); *Bertalan v. Bertalan*, 2025-Ohio-1443, ¶ 77 (8th Dist.). While we emphasize that we are not questioning the trial court's factual findings and legal conclusions, we find that Raida has failed to present authority suggesting her defenses were so ironclad that Qais's claims were frivolous.

{¶ 67} Moreover, "surviving a summary judgment motion demonstrates some evidentiary support for a party's claims." *Jiang*, 2022-Ohio-3816, at ¶ 22 (8th Dist.), citing *Merino v. Salem Hunting Club*, 2012-Ohio-4553, ¶ 17 (7th Dist.); *Wrinch v. Miller*, 2009-Ohio-3862, ¶ 55 (9th Dist.). Here, the trial court denied Raida's motion for summary judgment. We are cognizant that she premised her

motion on res judicata and that it is often a wise strategy for a party to selectively present only its best theories in dispositive motion practice. Nevertheless, if Qais's claims were wholly frivolous, lacking any legal or evidentiary support, one might have expected Raida and Tallan, LLC to have included arguments to that effect in their motion for summary judgment. They did not.

{¶ 68} "'Simply asserting that a plaintiff's claims can be disproven does not rise to the type of behavior that necessitates a court to conduct a hearing for frivolous conduct.'" *Woodrow*, 2023-Ohio-378, at ¶ 24 (8th Dist.), quoting *Sworak v. Great Lakes Recreational Vehicle Assn.*, 2021-Ohio-4309, ¶ 20 (8th Dist.). Moreover, "a hearing on a motion for sanctions is not required 'where the court has sufficient knowledge of the circumstances for the denial of the requested relief and the hearing would be perfunctory, meaningless, or redundant.'" *Gamage*, 2023-Ohio-4541, at ¶ 25 (8th Dist.), quoting *Wilson v. Wilson*, 2023-Ohio-1752, ¶ 39 (8th Dist.). The trial court became familiar with the parties and their attorneys through the course of proceedings, including dispositive motion practice and a bench trial, and was therefore in the best position to determine whether Qais's lawsuit was frivolous or was designed merely to harass or injure Raida. Indeed, unlike a case in which, for example, a party requests sanctions because of discovery misconduct, Raida's sanctions arguments dovetailed with her arguments on the merits of the underlying claims. Raida won, and Qais lost, but the trial court declined to find his lawsuit frivolous. We decline to disturb the trial court's judgment on that issue. Viewing the record under the objective standard required by R.C. 2323.51, we find that the

trial court did not abuse its discretion in denying Raida's motion for sanctions without a hearing. The record likewise does not suggest sanctionable conduct under the subjective Civ.R. 11 willfulness standard. Accordingly, Raida's sole assignment of error is overruled.

**{¶ 69}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
DEENA R. CALABRESE, JUDGE

LISA B. FORBES, P.J., and
MARY J. BOYLE, J., CONCUR